STATE OF NORTH CAROLINA v. LORENZA DONNELL NORWOOD

No. 318A94

(Filed 11 October 1996)

**1. Jury § 222 (NCI4th)— capital murder—jury selection— death qualification—other jurors confused by questions— no rehabilitation**

The trial court did not err in jury selection for a capital first-degree murder prosecution by excusing for cause twelve prospective jurors based on their answers to the trial court's death qualification questions. Although defendant contends that these jurors were likely confused since other prospective jurors expressed confusion when questioned about their responses, the record discloses that these twelve jurors unequivocally stated that they would be unable to vote for the death penalty even though they were satisfied beyond a reasonable doubt that the requirements for its imposition were present. Additional questions by defendant would not likely have produced different answers from those given to the court.

**Am Jur 2d, Criminal Law § 685; Jury § 279.**

**Comment Note.—Beliefs regarding capital punishment as disqualifying juror in capital case—post-*Witherspoon* cases. 39 ALR3d 550.**

**2. Jury § 172 (NCI4th)— capital murder—jury selection— death qualification—jury as cross-section of community— no violation**

A defendant in a capital first-degree murder prosecution was not deprived of his Sixth Amendment rights to a trial by a jury representing a fair cross-section of the community where the trial court during jury selection excused seven of nine African-American women and two of four African-American men after they said they would be unable to vote for the death penalty. Neither the Sixth Amendment nor *Batson v. Kentucky*, 476 U.S. 79, guarantees defendant the right to a jury composed of members of a certain race or gender, and *Batson* applies only to peremptory challenges, not challenges for cause. The excusal for cause of these jurors did not deprive defendant or the jurors of their constitutional rights.

**Am Jur 2d, Criminal Law § 685; Jury § 279.**

STATE v. NORWOOD

[344 N.C. 511 (1996)]

Comment Note.—Beliefs regarding capital punishment as disqualifying juror in capital case—post-*Witherspoon* cases. 39 ALR3d 550.

3. Jury § 258 (NCI4th)— capital murder—jury selection— State's use of peremptory challenges—no prima facie case of discrimination

The trial court did not err during jury selection for a capital first-degree murder prosecution by finding that defendant had not made out a *prima facie* case of discrimination in the State's use of a peremptory challenge where the trial judge found that the State had not previously used a peremptory challenge to strike an African-American juror, that an African-American man was seated on the panel, that there was no discernible pattern of removing African-American jurors, and that under the totality of the circumstances defendant had failed to make a *prima facie* showing of discrimination.

Am Jur 2d, Criminal Law §§ 681, 682; Jury § 244.

Proof as to exclusion of or discrimination against eligible class or race in respect to jury in criminal case. 1 ALR2d 1291.

Use of peremptory challenge to exclude from jury persons belonging to a class or race. 79 ALR3d 14.

Supreme Court's views as to use of peremptory challenges to exclude from jury persons belonging to same race as criminal defendant. 90 L. Ed. 2d 1078.

4. Jury §§ 82, 88 (NCI4th)— capital murder—jury selection— hardship discharge—last remaining black female

The trial court did not abuse its discretion in a capital first-degree murder prosecution by excusing the only remaining black female because of personal commitments. The juror was a single woman with five children who had just enrolled in community college and defendant concedes that this was a valid hardship excusal. Although defendant argues that the juror should not have been considered in isolation because she was defendant's last hope of having a black female on the jury, defendant is not entitled to a petit jury composed in whole or in part of persons of a certain race.

Am Jur 2d, Jury §§ 133-139, 179, 182.

STATE v. NORWOOD

[344 N.C. 511 (1996)]

**Purposeful inclusion of Negroes in grand or petit jury as unconstitutional discrimination justifying relief in federal court. 4 ALR Fed. 449.**

**Construction and application of provisions of Jury Selection and Service Act of 1968 (28 USCS secs. 1861-1867) governing plans for, and manner of, selecting federal grand and petit jurors. 17 ALR Fed. 590.**

**Group or class discrimination in selection of grand or petit jury as prohibited by Federal Constitution—Supreme Court cases. 33 L. Ed. 2d 783.**

5. **Jury § 204 (NCI4th)— capital murder—jury selection— State's burden—excusal for cause**

The trial court did not abuse its discretion during jury selection in a capital first-degree murder prosecution by excusing two prospective jurors for cause where one stated that she would require the State to prove each element beyond all doubt, the other that he would hold the State to a higher burden at the sentencing phase than at the guilt-innocence phase and the court did not permit the defendant to attempt to rehabilitate them. The inability of these two prospective jurors to follow the legal standard required the trial court to excuse them for cause pursuant to N.C.G.S. § 15A-1212(8).

**Am Jur 2d, Jury §§ 205, 206.**

**Effect of accused's federal constitutional rights on scope of voir dire examination of prospective jurors— Supreme Court cases. 114 L. Ed. 2d 763.**

6. **Jury § 139 (NCI4th)— capital murder—jury selection— reasonable doubt**

There was no prejudicial error during jury selection for a capital first-degree murder prosecution by sustaining the State's objection when defendant asked a prospective juror whether he understood that "satisfies beyond a reasonable doubt" means "fully satisfies or entirely convinces you of the defendant's guilt" where the court read to the jury the pattern jury instruction, which included this phrase, and correctly instructed the entire jury in the charge at the end of each phase of the trial.

**Am Jur 2d, Jury §§ 205, 206.**

STATE v. NORWOOD

[344 N.C. 511 (1996)]

Effect of accused's federal constitutional rights on scope of voir dire examination of prospective jurors— Supreme Court cases. 114 L. Ed. 2d 763.

7. Jury § 150 (NCI4th)— capital murder—jury selection— death qualification—disparate treatment of defendant and State

The trial court did not abuse its discretion during jury selection for a capital first-degree murder prosecution where defendant contended that there was disparate treatment of defendant and the State in that there were sixteen instances in which the court denied rehabilitation of prospective jurors who said they were unable to vote for the death penalty whatever the evidence showed, in contrast to the court's allowing extensive rehabilitation of prospective jurors who believed the death penalty should be imposed in every case of first-degree murder. The jurors were excused for cause in two of the cases cited by defendant in which further questioning was allowed after the prospective juror indicated that the death penalty was appropriate for all cases of first-degree murder and in the other instances the court properly denied the challenges after rehabilitation.

Am Jur 2d, Jury §§ 230-233, 279.

Comment Note.—Beliefs regarding capital punishment as disqualifying juror in capital case—post-*Witherspoon* cases. 39 ALR3d 550.

Effect of accused's federal constitutional rights on scope of voir dire examination of prospective jurors— Supreme Court cases. 114 L. Ed. 2d 763.

8. Jury § 203 (NCI4th)— capital murder—jury selection— opinion that this crime terrible—ability to follow the law

The trial court did not err during jury selection in a prosecution for first-degree murder by denying challenges for cause to two jurors who stated that this particular homicide was "terrible" and "painful." Although defendant contended that the prospective jurors had already formed an opinion on whether this homicide was especially heinous, atrocious, or cruel, both jurors stated unequivocally that they could follow the law and there is no indication that their regard for the way the victim died as "terrible" or "painful" would have influenced their ability to do so.

Am Jur 2d, Jury §§ 230-233, 278, 284.

9. **Jury § 203 (NCI4th)— capital murder—jury selection—jury with some knowledge of case—ability to be fair—disparate treatment of another juror**

The trial court did not err during jury selection for a capital first-degree murder prosecution by not excusing for cause a prospective juror who worked as a telecommunicator for emergency services and had dispatched rescue vehicles to this crime scene; his wife worked for the owner of the convenience store where the crime occurred; and he knew "a little" about the case. This juror stated unequivocally that he could be a fair and impartial juror and that he could follow the law in this case. Although defendant contends that disparate treatment given to another juror challenged for cause indicates that unequivocal answers to similar questions ended in for-cause excusals for the State, disparate treatment of another prospective juror is not evidence that the trial court abused its discretion.

**Am Jur 2d, Jury §§ 230-233, 289.**

10. **Constitutional Law § 371 (NCI4th)— death penalty—not unconstitutional**

Although defendant argued that the constitutionality of North Carolina's death penalty should be reconsidered in light of Justice Blackmun's dissenting opinion in *Callins v. Collins*, 510 U.S. 1141, the North Carolina Supreme Court declined to change its position.

**Am Jur 2d, Criminal Law § 628.**

**Supreme Court's views on constitutionality of death penalty and procedures under which it is imposed or carried out. 90 L. Ed. 2d 1001.**

**Validity of death penalty, under Federal Constitution, as affected by consideration of aggravating or mitigating circumstances—Supreme Court cases. 111 L. Ed. 2d 947.**

11. **Constitutional Law § 371 (NCI4th)— death penalty—IQ of 69—not unconstitutional**

A sentence of death for a defendant with an IQ of 69 was not unconstitutional. The United States Supreme Court has ruled that the Eighth Amendment does not categorically prohibit the execution of mentally retarded defendants who commit capital crimes, the North Carolina Supreme Court has refused to extend special

STATE v. NORWOOD

[344 N.C. 511 (1996)]

protection to mentally retarded defendants under the North Carolina Constitution, and several death sentences involving defendants with IQs lower than this defendant's have been upheld. The defendant in this case passed the North Carolina competency test, obtained his driver's license, and held several jobs. A psychologist testified that he thought defendant knew that burning someone was wrong.

Am Jur 2d, Criminal Law § 628.

Propriety of imposing capital punishment on mentally retarded individuals. 20 ALR5th 177.

Supreme Court's views on constitutionality of death penalty and procedures under which it is imposed or carried out. 90 L. Ed. 2d 1001.

Validity of death penalty, under Federal Constitution, as affected by consideration of aggravating or mitigating circumstances—Supreme Court cases. 111 L. Ed. 2d 947.

12. Evidence and Witnesses §§ 1700, 1688 (NCI4th)— capital murder—autopsy photographs—photos of victim while alive

The trial court did not err in a capital first-degree murder prosecution by showing to the jury autopsy photographs of the victim and a photograph taken before his death. Defendant concedes that the autopsy photographs of the victim were used to illustrate the testimony of the medical examiner, it has repeatedly been held that showing photographs of victims made during their lives is not prejudicial error, and defendant has failed to show that the photographs were unduly prejudicial or that their admission was not proper.

Am Jur 2d, Evidence §§ 963, 964.

Necessity and effect, in homicide prosecution, of expert medical testimony as to cause of death. 65 ALR3d 283.

Evidence offered by defendant at federal criminal trial as inadmissible, under Rule 403 of Federal Rules of Evidence, on ground that probative value is substantially outweighed by danger of unfair prejudice, confusion of issues, or misleading the jury. 76 ALR Fed. 700.

**13. Evidence and Witnesses § 2809 (NCI4th)— capital murder—leading question—incorrect repetition of answer—no prejudice**

There was no prejudicial error in a capital first-degree murder prosecution where defendant contended that the prosecutor improperly led a twelve-year-old witness and that the prosecutor's incorrect repetition of the answer was the only evidence that the defendant had any intention to kill the victim. The witness's correction of the incorrect statement of the prosecuting attorney made any error harmless and, even without the prosecutor's misstatement, there was sufficient evidence from which a jury could find that defendant intended to kill the victim when he doused him with gasoline.

**Am Jur 2d, Trial § 499; Witnesses § 853.**

**Cross-examination by leading questions of witness friendly to or biased in favor of cross-examiner. 38 ALR2d 952.**

**14. Evidence and Witnesses § 82 (NCI4th); Criminal Law § 1346 (NCI4th)— capital murder—burning of store and victim—officer's conversation with customer**

There was no prejudice in a capital first-degree murder prosecution resulting from a burning in the admission of an officer's testimony about a witness's burns, observed when the officer spoke with the witness at a hospital, where defendant contended that the State produced no competent evidence to support its allegation that this man was burned as a result of defendant's acts. The officer's testimony was certainly relevant and admissible to support the charge that defendant committed an assault with a deadly weapon with intent to kill inflicting serious injury upon the witness and the court's dismissal of the assault indictment at the close of the State's evidence does not affect the admissibility of this evidence. Although defendant contended that there was a prejudicial effect on sentencing since no other evidence before the jury showed that someone other than the murder victim had been injured in the fire, there was testimony that others were in the store when the fire was set. N.C.G.S. § 15A-2000(e)(10) is concerned with the creation of a great risk of death to more than one person; it is not necessary that more than one person was actually injured.

**Am Jur 2d, Evidence § 305; Homicide § 5.**

STATE v. NORWOOD

[344 N.C. 511 (1996)]

Admissibility in state court proceedings of police reports under official record exception to hearsay rule. 31 ALR4th 913.

Admissibility of statement made to government agent by unavailable witness, under Rule 804(b)(5) of Federal Rules of Evidence, providing for admissibility of hearsay statement not covered by any specific exception but having equivalent circumstantial guaranties of trustworthiness. 61 ALR Fed. 915.

Exception to hearsay rule, under Rule 803(3) of Federal Rules of Evidence, with respect to statement of declarant's mental, emotional, or physical condition. 75 ALR Fed. 170.

**15. Criminal Law § 687 (NCI4th)— capital murder—requested instruction—given in substance**

There was no error in a capital first-degree murder prosecution in the court's instructions on expert witnesses where the court did not give the charge requested by defendant, but the charge given instructed the jury in substance as requested by defendant.

Am Jur 2d, Homicide § 488; Trial § 1226.

Necessity and effect, in homicide prosecution, of expert medical testimony as to cause of death. 65 ALR3d 283.

**16. Evidence and Witnesses § 222 (NCI4th)— capital murder— flight—instruction**

The trial court did not err in a capital first-degree murder prosecution by instructing the jury on flight where the evidence showed that defendant ran from the burning building and went to the house of a girl he knew; approximately six or seven hours passed by the time he called the police; and defendant testified that he knew by that time that police had seized his car and were looking for him. Regardless of the reason for the flight, the relevant inquiry is whether there is evidence that defendant left the scene and took steps to avoid apprehension.

Am Jur 2d, Evidence §§ 532-534; Homicide § 319; Trial §§ 1333-1335.

**17. Homicide § 244 (NCI4th)— capital murder—premeditation and deliberation—sufficiency of evidence**

There was sufficient evidence of premeditation and deliberation in a first-degree murder prosecution where the evidence showed that defendant and the victim had an altercation a few hours before the arson; defendant said he was going to "get" the victim and then threw a burning paper bag and gasoline at the victim behind the counter; and there was eyewitness testimony that defendant did not trip, but "gush[ed]" the gasoline behind the counter and then threw the container at the victim. Although defendant argues that the witnesses told divergent stories, that he had been drinking and smoking crack on the day of the fire, and that a psychologist had testified that he did not have the capacity to form the specific intent to kill, the jury is not required to accept the opinions or conclusions of a witness, expert or otherwise; furthermore, defendant was convicted under the felony murder rule as well as under the theory of premeditation and deliberation and his conviction for first-degree murder would not be affected even if the evidence of premeditation and deliberation was insufficient.

**Am Jur 2d, Homicide §§ 52, 263-266, 439, 472.**

**Modern status of the rules requiring malice aforethought, deliberation, or premeditation as elements of murder in the first degree. 18 ALR4th 961.**

**18. Criminal Law § 463 (NCI4th)— capital murder—prosecutor's argument—close to evidence admitted**

There was no error during a capital first-degree murder prosecution where the prosecutor was allowed to argue during the guilt phase testimony which defendant contends was not in evidence. The statement attributed to the witness by the prosecutor was close enough that there was no error.

**Am Jur 2d, Criminal Law § 917; Trial §§ 572, 573.**

**19. Criminal Law § 441 (NCI4th)— capital murder—prosecutor's argument—defense psychologist**

There was no error in sentencing phase closing arguments in a first-degree capital murder trial where the prosecutor stated that defendant's psychologist was not a forensic psychiatrist, but a psychologist who "helps children get over divorce." Even though the trial court accepted the witness as an expert, the pros-

ecutor's statements were supported by the record; additionally, it is not improper for the prosecutor to impeach the credibility of an expert during his closing argument.

**Am Jur 2d, Criminal Law § 917.**

**Propriety and prejudicial effect of counsel's negative characterization or description of witness during summation of criminal trial—modern cases. 88 ALR4th 209.**

**Supreme Court's views as to what courtroom statements made by prosecuting attorney during criminal trial violate due process or constitute denial of fair trial. 40 L. Ed. 2d 886.**

**20. Criminal Law § 452 (NCI4th)— capital murder—prosecutor's argument—catchall mitigating circumstance**

There was no error in a capital first-degree murder prosecution where the prosecutor stated that the catchall mitigating circumstance indicated that defendant was "grasping at straws." This argument was not a depreciation of mitigating evidence so improper that it required *ex mero motu* intervention. Additionally, the trial court correctly instructed the jury on mitigating circumstances, including N.C.G.S. § 15A-2000(f)(9), and the jurors are presumed to follow the trial court's instructions.

**Am Jur 2d, Criminal Law §§ 628, 917; Trial §§ 572, 573.**

**21. Criminal Law § 543 (NCI4th)— capital murder—prosecutor's questions—mistrial denied**

The trial court did not abuse its discretion during a first-degree murder sentencing hearing by denying defendant's motion for a mistrial where the prosecutor asked defendant's high school teacher, who had testified about her opinion of defendant's ability and character, whether she thought the family and friends of the victim thought defendant deserved to die for the crime and whether she thought defendant was respectful of the victim when defendant poured gasoline on him and set him on fire. The trial court sustained defendant's objections and allowed motions to strike but defendant did not request a curative instruction. Defendant failed to show that the mere asking of questions to which objections were sustained prejudiced him.

**Am Jur 2d, Criminal Law § 917; Trial §§ 572, 573.**

Cross-examination of character witness for accused with reference to particular acts or crimes—modern state rules. 13 ALR4th 796.

22. **Criminal Law § 1346 (NCI4th)— capital murder—aggravating circumstances—risk of death to more than one person**

The trial court did not err in a capital sentencing proceeding by submitting the aggravating circumstance that defendant knowingly created a great risk of death to more than one person by means of a weapon or device which would normally be hazardous to the lives of more than one person. The State's evidence showed that defendant threw a burning paper bag and gasoline into a convenience store during business hours; the store exploded into flames after the defendant had escaped; and at least two other people were in the store at the time. Defendant should have known that his action was hazardous to them and a can of gasoline, when used in conjunction with a burning paper bag, constitutes a device that has the potential to kill more than one person. N.C.G.S. § 15A-2000(e)(10).

**Am Jur 2d, Criminal Law §§ 598 et seq.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that in committing murder, defendant created risk of death or injury to more than one person, to many persons, and the like—post-*Gregg* cases. 64 ALR4th 837.**

23. **Criminal Law § 1373 (NCI4th)— death sentence—not disproportionate**

A death sentence for a first-degree murder was not disproportionate where the evidence supports the aggravating circumstances and there was no indication that the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor. Defendant was found guilty of first-degree murder based on both the felony murder rule and on premeditation and deliberation, the jury found the murder to be especially heinous, atrocious, or cruel, and the victim suffered great physical pain in that he was burned alive and survived for twelve hours, knowing that death was imminent. Defendant, having set the victim on fire, did nothing to procure medical assistance, to inquire into the victim's condition, or to express remorse to the victim; in his own words, he stood and watched the victim burn

STATE v. NORWOOD

[344 N.C. 511 (1996)]

and then left the scene; and he went to a friend's house and did not call the police until several hours later. Although defendant contends that he is not "normal," the defendant's mental status does not render the death sentence disproportionate.

**Am Jur 2d, Criminal Law § 628.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Sumner, J., at the 16 May 1994 Criminal Session of Superior Court, Nash County, upon a verdict of guilty of first-degree murder. The defendant's motion to bypass the Court of Appeals on his appeal from a conviction for willfully burning a building was allowed by this Court on 27 April 1995. Heard in the Supreme Court 13 December 1995.

The defendant was tried for first-degree murder, conspiracy to commit murder, willfully burning a building, and assault with a deadly weapon with intent to kill inflicting serious injury. The evidence at trial tended to show that on 13 April 1993, the defendant attempted to purchase a pint of wine from the Honolulu Mart convenience store. When the defendant was twenty cents short, the store clerk, Walid Al-Hourani, refused to sell him the wine. John Winstead, a customer in the store, agreed to pay the twenty cents upon the defendant's request, but the clerk still refused to sell wine to the defendant. After asking the defendant to leave, the clerk hit him on the arm with a baseball bat.

The defendant then walked down the path behind the Honolulu Mart and found his cousin, Herbert Joyner, who was with Mike Richardson. When the defendant told them what had happened, Joyner said, "You ought to burn the store down." Later, Joyner added, "If you set the store on fire, then I'm going to rob the store." Richardson procured a container half-filled with gasoline and gave it to the defendant. Joyner and the defendant then returned to the Honolulu Mart. The State's evidence tended to show that the defendant told Joyner he was going to "get" the clerk. Joyner waited outside while the defendant threw a burning paper bag into the store and then doused the clerk and his surroundings with gasoline. The store caught fire. One customer, Lynard Lancaster, escaped unharmed. He testified that another customer ran out of the store with his leg on fire and then left the scene. Al-Hourani, engulfed in flames, ran from the store shouting, "I'm gone, I'm gone." He had burns on ninety-five percent of his body and died within twelve hours of the incident. Before

STATE v. NORWOOD

[344 N.C. 511 (1996)]

he died, the victim identified the men responsible for his burns as "Herb" and "Bedrock," the nicknames of Joyner and the defendant.

The defendant testified that he intended only to scare the victim because the victim had hit him several times with a baseball bat earlier that day. According to the defendant, he returned to the store carrying gasoline in a jug because he "just wanted to scare the Jew to show him that he couldn't beat me with that bat like that." The defendant testified that Joyner threw a burning bag into the store. The defendant stated that he (the defendant) tripped on the threshold at the door, and the gas flew out of his hand onto the counter and the floor. When he saw that the victim was on fire, the defendant "panicked," so he watched the victim burn for a few moments and then walked away. He went to his mother's house, but when she was not there, he went to the home of a girl he knew. Approximately six hours later, when he discovered that police had located his car and were looking for him, the defendant called the police station and turned himself in.

Dr. John Gorman, a psychologist, testified that the defendant's IQ is 69 and that the defendant has "mild mental retardation with depression and certainly very severe problems with substance abuse." Although he stated that in his opinion the defendant did not have the capacity to form the specific intent to kill, Dr. Gorman stated that the defendant knew that burning a person "was something that was wrong."

The jury returned a verdict of guilty of first-degree murder based on premeditation and deliberation and felony murder and guilty of willfully burning a building. The jury found the defendant not guilty of conspiracy to commit murder. The court dismissed the assault charge. The defendant presented evidence at the sentencing phase that after the death of the defendant's best friend, the defendant changed and his drug use worsened. The defendant's mother testified that after the fire, the defendant was "sorry." There was also testimony that the defendant was mentally retarded, chronically depressed, and addicted to drugs and alcohol.

The jury found two aggravating circumstances, that the murder was especially heinous, atrocious, or cruel, and that the defendant knowingly created a great risk of death to more than one person by means of a weapon which would normally be hazardous to the lives of more than one person. One or more jurors found twenty-eight mitigating circumstances, only three of which were statutory.

Nevertheless, the jury found that the mitigating circumstances did not outweigh the aggravating circumstances and that the aggravating circumstances were sufficiently substantial to warrant imposition of the death penalty. Thus, the jury returned a recommendation of death, and the trial court sentenced the defendant to death in accordance with that recommendation. The defendant was sentenced, in addition, to thirty years' imprisonment for willfully burning a building. The defendant appealed.

*Michael F. Easley, Attorney General, by John G. Barnwell, Assistant Attorney General, for the State.*

*William F.W. Massengale and Marilyn G. Ozer for the defendant-appellant.*

WEBB, Justice.

The defendant brings forth numerous assignments of error relating to each facet of the trial and capital sentencing proceeding. For the reasons set forth herein, we find the defendant's trial and sentencing proceeding to have been free from prejudicial error.

### JURY SELECTION ISSUES

[1] The defendant first assigns error to the excusal for cause of twelve prospective jurors based on their answers to the trial court's death qualification questions. First, the defendant says that the trial court's questions were confusing and that they failed to establish either an understanding on the part of the jurors of what they were being asked or an actual bias justifying their removal from the venire. *Wainwright v. Witt*, 469 U.S. 412, 83 L. Ed. 2d 841 (1985); *Witherspoon v. Illinois*, 391 U.S. 510, 20 L. Ed. 2d 776 (1968). The defendant also says the trial court abused its discretion by failing to allow him the opportunity to rehabilitate these jurors. Finally, the defendant argues that the trial court's "formula" for excusing jurors for cause had a devastating impact on the racial composition of the jury, in violation of the Sixth Amendment to the United States Constitution, and infringed on the rights of the excluded jurors under *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69 (1986). These contentions are without merit.

The trial court explained to each prospective juror the procedure followed in a capital sentencing hearing in pertinent part as follows:

## STATE v. NORWOOD

[344 N.C. 511 (1996)]

The law . . . provides . . . that it is the duty of the jury to recommend that the defendant be sentenced to death if the State satisfies the twelve jurors beyond a reasonable doubt of three things: Number one, that one or more of the aggravating circumstances prescribed by statute exists; number two, that the aggravating circumstances are sufficiently substantial to call for the imposition of the death penalty; and number three, that any mitigating circumstances found to exist are insufficient to outweigh the aggravating circumstances found. Do you understand that . . . ?

. . . .

If the State fails to satisfy the jury of all these three things . . . it is the duty of the jury to recommend life imprisonment. Do you understand that . . . ?

The court then asked each juror the following questions:

If you are selected to serve as a juror in this case, can and will you follow the law as it will be explained to you by the Court in deciding whether the defendant is guilty or not guilty of first degree murder or of any other lesser offense?

. . . .

If you are satisfied beyond a reasonable doubt of those things necessary to constitute first degree murder, can and will you vote to return a verdict of guilty of first degree murder, even though you know that death is one of the possible penalties?

. . . .

Considering your personal beliefs about the death penalty . . . please state for me . . . whether you would be able or unable to vote for a recommendation of the death penalty, even though you are satisfied beyond a reasonable doubt of the three things required by law concerning the aggravating and mitigating circumstances previously mentioned[.]

The trial court excused for cause those jurors who answered that they would be "unable" to vote for a recommendation of death, even if they answered that they could follow the law as to the sentencing requirements.

We upheld the same process and reason for excusing jurors for cause in *State v. Ward*, 338 N.C. 64, 449 S.E.2d 709 (1994), *cert. denied*, —— U.S. ——, 131 L. Ed. 2d 1013 (1995). In that case we held

that the trial court did not improperly excuse for cause those jurors who stated that they would be unable to impose the death penalty. *Id.* at 87-88, 449 S.E.2d at 721-22. We further held that the trial court's use of standardized questions and answers and its failure to allow rehabilitation by the defendant was not an abuse of discretion. *Id.*

We have held that a venireman may be excused for cause if he is irrevocably committed before the trial begins to vote against the death penalty regardless of the facts and circumstances that might emerge in the course of the proceedings. *State v. Brogden,* 334 N.C. 39, 41, 430 S.E.2d 905, 907 (1993). A juror cannot properly be excused for cause for his views on capital punishment unless those views "would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" *Wainwright v. Witt,* 469 U.S. at 424, 83 L. Ed. 2d at 851-52 (quoting *Adams v. Texas,* 448 U.S. 38, 45, 65 L. Ed. 2d 581, 589 (1980)). It is not an abuse of discretion to refuse to allow the rehabilitation of a juror who has expressed unequivocal opposition to the death penalty. *State v. Cummings,* 326 N.C. 298, 307, 389 S.E.2d 66, 71 (1990).

The defendant concedes that there is no evidence on the record that any of the prospective jurors were confused or misunderstood the questions. He contends, however, that their confusion was likely since other prospective jurors expressed confusion when questioned about their responses. As in *Ward,* the record discloses that twelve prospective jurors in this case unequivocally stated that they would be unable to vote for the death penalty even though they were satisfied beyond a reasonable doubt that the requirements for its imposition were present. Additional questions by the defendant would not likely have produced different answers from those given to the court. *Id.* It was not error for the court to deny the defendant the right to question these prospective jurors further.

[2] Finally, the defendant contends that the trial court's allowance of these challenges for cause deprived him of his constitutional rights to a trial by a jury representing a fair cross-section of the community as guaranteed by the Sixth Amendment. He says this is so because seven of the nine African-American women and two of the four African-American men were excluded after they said they would be "unable" to vote for the death penalty. The defendant also says, citing *Batson v. Kentucky,* 476 U.S. 79, 90 L. Ed 2d 69, that the challenges infringed on the rights of these excluded jurors. There is no merit to either argument.

STATE v. NORWOOD

[344 N.C. 511 (1996)]

These prospective jurors were properly excused for cause because of their opposition to the death penalty. Neither the Sixth Amendment nor *Batson* guarantees the defendant the right to a jury composed of members of a certain race or gender. *See Lockhart v. McCree*, 476 U.S. 162, 90 L. Ed. 2d 137 (1986); *Taylor v. Louisiana*, 419 U.S. 522, 42 L. Ed. 2d 690 (1975). Furthermore, *Batson* applies only to peremptory challenges, not challenges for cause. The excusal of these jurors for cause did not deprive the defendant or the jurors of their constitutional rights. *State v. Avery*, 315 N.C. 1, 19, 337 S.E.2d 786, 796 (1985).

This assignment of error is overruled.

**[3]** In his next assignment of error, the defendant contends that the trial court erred by failing to find that the defendant had established *prima facie* grounds to challenge the prosecutor's racially discriminatory use of a peremptory challenge and by improperly excusing a juror for cause. *Batson*, 476 U.S. 79, 90 L. Ed. 2d 69.

After the trial court had excused several of the minority jurors, the State used a peremptory challenge to excuse prospective juror Towanda Cooper. The defendant contends that nothing in the *voir dire* suggests a nondiscriminatory reason for excusing Ms. Cooper. He says he made a credible *prima facie* showing of discrimination because of the races of the defendant and victim, the racial overtones of the case, and the ultimate racial make-up of the jury. *See State v. Smith*, 328 N.C. 99, 400 S.E.2d 712 (1991). The trial judge found that the State had not previously used a peremptory challenge to strike an African-American juror, that an African-American man was seated on the panel, and that there was no discernible pattern of removing African-American jurors. He concluded that under the totality of the circumstances, the defendant failed to make a *prima facie* showing of discrimination. We accord great deference to the findings of the trial court. *State v. Larrimore*, 340 N.C. 119, 134, 456 S.E.2d 789, 796 (1995). We cannot say the trial court erred in finding that the defendant had not made out a *prima facie* case of discrimination.

**[4]** The defendant also argues that the court improperly excused Doris Williams, the only remaining black female, because of personal commitments. The juror was a single woman with five children and had just enrolled in community college. The defendant concedes that the trial court validly exercised discretion and that this was a valid hardship excusal. The defendant argues, however, that the juror should not have been considered in isolation, as she was the defend-

ant's last hope of having a black female serve on the jury. He contends that he was denied a jury comprised of a fair cross-section of the community. As we discussed above, the defendant is not entitled to a petit jury composed in whole or in part of persons of a certain race. *Lockhart v. McCree*, 476 U.S. 162, 90 L. Ed. 2d 137. The court properly exercised its discretion in this instance and did not err in excusing Ms. Williams *ex mero motu*.

This assignment of error is overruled.

In his next assignment of error, the defendant again contests the excusal for cause of two prospective jurors. Both prospective jurors stated that they were unable to impose the death penalty. For the reasons stated above, this assignment of error is overruled.

**[5]** In his next assignment of error, the defendant contends that the trial court erred by excusing prospective jurors for cause without allowing the defendant to inquire from them if they understood the concept of reasonable doubt and without further instruction on reasonable doubt. The defendant argues that the State lowered its burden of proof and set up a "false dichotomy" by limiting the jurors' choices to "reasonable doubt" and "all doubt." This argument has no merit.

Juror Ruth Strickland Thomas stated that she understood the State's burden, but that she would require the State to prove each element "beyond all doubt." Juror John Robert Fulk stated that he would hold the State to a higher burden at the sentencing phase than at the guilt-innocence phase. The State challenged each juror for cause, which the court allowed. The court did not permit the defendant to attempt to rehabilitate them.

The inability of these two prospective jurors to follow the legal standard required the trial court to excuse them for cause pursuant to N.C.G.S. § 15A-1212(8). The defendant cannot show that the trial court abused its discretion by denying his request to attempt to rehabilitate them. *See State v. McCollum*, 334 N.C. 208, 234, 433 S.E.2d 144, 158 (1993), *cert. denied*, —— U.S. ——, 129 L. Ed. 2d 895 (1994).

**[6]** The defendant also argues that the trial court erred in sustaining the State's objection to the defendant's questioning of prospective juror John Baines. The defendant asked him whether he understood that satisfies "beyond a reasonable doubt" means "fully satisfies or entirely convinces you of the defendant's guilt." The trial court sustained an objection by the State to this question and then gave the

pattern instruction on the meaning of reasonable doubt, which included this phrase. Any error by the trial court in sustaining the objection was cured by the trial court's reading the pattern instruction to the juror and by correctly instructing the entire jury on reasonable doubt in his charge at the end of each phase of the trial. *See State v. White*, 340 N.C. 264, 278, 457 S.E.2d 841, 849, *cert. denied*, —— U.S. ——, 133 L. Ed. 2d 436 (1995).

This assignment of error is overruled.

**[7]** In his next assignment of error, the defendant contends there was disparate treatment of the State and the defendant during the jury *voir dire*. He bases this argument on what he says were sixteen instances in which the court denied rehabilitation of prospective jurors who said they were unable to impose the death penalty whatever the evidence showed, in contrast to the court's allowing extensive rehabilitation of prospective jurors who believed the death penalty should be imposed in every case of first-degree murder.

We have held that it was not error to deny rehabilitation in those instances in which a prospective juror said he or she was unable to impose the death penalty whatever the evidence showed. We have examined the instances cited by the defendant in which further questioning was allowed after the prospective juror had indicated he or she felt the death penalty is the appropriate sentence for all cases of first-degree murder. Two of the jurors so questioned were excused for cause. The defendant suffered no prejudice from the questioning of these prospective jurors. In the other instances, the court properly denied the challenges for cause after rehabilitation. The defendant cannot complain of these rulings. It is within the discretion of the court whether to allow the rehabilitation of jurors, and the court did not abuse its discretion in this case. *State v. Abraham*, 338 N.C. 315, 343, 451 S.E.2d 131, 145 (1994).

This assignment of error is overruled.

**[8]** By his next assignment of error, the defendant contends that the trial court erred in denying certain of the defendant's challenges for cause. The defendant argues that jurors Benjamin Melton and Michael Farrell should have been excused because they stated that this particular homicide was "terrible" and "painful." The defendant says that the prospective jurors had thus already formed an opinion on the issue of whether this homicide was especially heinous, atrocious, or cruel. N.C.G.S. § 15A-2000(e)(9) (Supp. 1995).

A review of the record reveals that both jurors stated unequivocally that they could follow the law. There is no indication that their regard for the way the victim died as "terrible" or "painful" would have influenced their ability to do so. As such, we cannot say the trial court erred in denying the challenges for cause.

[9] The defendant also argues that the court should have allowed his excusal for cause of prospective juror Alwyn Ray Dixon, who had personal involvement in the case. Mr. Dixon testified on *voir dire* that as telecommunicator for Nash County Emergency Services, he had dispatched the rescue vehicles to the crime scene; that his wife worked for the owner of the Honolulu Mart; and that he knew "a little" about the case. The defendant contends that disparate treatment given to another juror challenged for cause indicates that unequivocal answers to similar questions ended in for-cause excusals for the State.

A review of the record reveals that Mr. Dixon stated unequivocally that he could be a fair and impartial juror and that he could follow the law in this case. *Cf. State v. Hightower*, 331 N.C. 636, 641, 417 S.E.2d 237, 240 (1992). Disparate treatment of another prospective juror is not evidence that the trial court abused its discretion. The defendant established no grounds to excuse Mr. Dixon for cause, and the trial court did not err in denying the defendant's motion.

This assignment of error is overruled.

## GUILT-INNOCENCE PHASE ISSUES

[10] The defendant next argues that the death penalty is unconstitutional. The defendant acknowledges that this Court has consistently upheld the constitutionality of the death penalty statute in this State. *See, e.g., State v. Williams*, 339 N.C. 1, 452 S.E.2d 245 (1994), *cert. denied,* —— U.S. ——, 133 L. Ed. 2d 61 (1995); *State v. Roper*, 328 N.C. 337, 402 S.E.2d 600, *cert. denied,* 502 U.S. 902, 116 L. Ed. 2d 232 (1991). However, he asks this Court to reconsider its position in light of Justice Blackmun's dissenting opinion in *Callins v. Collins*, 510 U.S. 1141, 127 L. Ed. 2d 435 (1994). We specifically rejected this argument in *State v. Powell*, 340 N.C. 674, 459 S.E.2d 219 (1995), *cert. denied,* —— U.S. ——, 133 L. Ed. 2d 688 (1996), and decline to change our position.

This assignment of error is overruled.

**[11]** The defendant also contends that the death penalty is unconstitutional as applied to him in this case because he is mentally retarded. He argues that sentencing him to death violates his rights under the Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 19 and 27 of the North Carolina Constitution.

Dr. John Gorman testified that the defendant has an IQ of 69. In *Penry v. Lynaugh*, 492 U.S. 302, 335, 106 L. Ed. 2d 256, 289 (1989), the United States Supreme Court ruled that the Eighth Amendment does not categorically prohibit the execution of mentally retarded defendants who commit capital crimes. Similarly, we refused to extend special protection to mentally retarded defendants under the North Carolina Constitution in *State v. Skipper*, 337 N.C. 1, 446 S.E.2d 252 (1994), *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 895 (1995). Furthermore, we have upheld several death sentences involving defendants with IQs lower than the defendant's. *See, e.g., State v. McCollum*, 334 N.C. 208, 433 S.E.2d 144; *State v. Artis*, 325 N.C. 278, 384 S.E.2d 470 (1989), *sentence vacated on other grounds*, 494 U.S. 1023, 108 L. Ed. 2d 604 (1990). The defendant in this case passed the North Carolina competency test, obtained his driver's license, and held several jobs. Dr. Gorman testified that he thought the defendant knew that burning someone was wrong. The imposition of the death penalty on the defendant in this case is not unconstitutional.

This assignment of error is overruled.

**[12]** The defendant next assigns error to the showing of certain photographs of the victim to the jury. Three of the photographs, including one that was oversized, were autopsy photographs used by the medical examiner to illustrate his testimony concerning the nature and extent of the victim's injuries, as well as the cause and mechanism of his death. The trial court also allowed the State to introduce and publish to the jury a photograph of the victim that was taken before his death. The defendant contends that these photographs violated the trial court's victim-impact order and served no purpose other than to inflame the jury. N.C.G.S. § 8C-1, Rule 403 (1988).

"Photographs are usually competent to be used by a witness to explain or illustrate anything that it is competent for him to describe in words." *State v. Watson*, 310 N.C. 384, 397, 312 S.E.2d 448, 457 (1984) (quoting *State v. Cutshall*, 278 N.C. 334, 347, 180 S.E.2d 745, 753 (1971)). "Photographs of a homicide victim may be introduced even if they are gory, gruesome, horrible or revolting, so long as they are used for illustrative purposes and so long as their excessive or

repetitious use is not aimed solely at arousing the passions of the jury." *State v. Hennis*, 323 N.C. 279, 284, 372 S.E.2d 523, 526 (1988). Further, we have repeatedly held that showing photographs of victims made during their lives is not prejudicial error. *See, e.g., State v. Goode*, 341 N.C. 513, 539-40, 461 S.E.2d 631, 647 (1995). In this case, the defendant concedes that the autopsy photographs of the victim were used to illustrate the testimony of the medical examiner. The defendant has failed to show that the photographs were unduly prejudicial or that their admission was not proper.

This assignment of error is overruled.

[13] The defendant next contends that the trial court erred in overruling two of his objections to the prosecutor's questioning of April Fields. Fields was twelve years old at the time of trial and had been present at the scene of the crime. She testified that she overheard a conversation between the defendant and Joyner on their way to the Honolulu Mart. The following colloquy occurred between Miss Fields and the prosecutor:

A: [The defendant] said, "Man, we going to get him. We're going to get him." And Herb said, "We sure is." No, he said, "We are. We're together, we're going to do it." And then he said, "If you're going to do it, do it," or something like that.

Q: Let me see if I understand exactly what you said. [The defendant] said to Mr. Joyner, "We're going to get him. I'm going to kill him." Is that what he said?

MR. FALK: Objection, your Honor.

THE COURT: Overruled.

Q: Keep your voice up now.

A: He said that, "I am going to get him," and Herb said, "If you're going to do it, do it, because we're together and we're going to go down together."

The defendant contends that the prosecutor's leading of the witness was improper and that his incorrect repetition of the answer was prejudicial. The defendant says that this statement by the prosecutor is the only evidence that the defendant had any intention to kill the victim. We note that the witness' correction of the incorrect statement of the prosecuting attorney made any error harmless. Even without the prosecutor's misstatement, there was sufficient evidence

from which a jury could find that the defendant intended to kill the victim when he doused him with gasoline.

This assignment of error is overruled.

**[14]** The defendant next assigns error to the admission of Officer James Breedlove's testimony concerning a Mr. Orlando Dew on the grounds that the evidence was inadmissible, inflammatory, improper, and prejudicial. N.C.G.S. § 8C-1, Rule 403. The State elicited testimony from Officer Breedlove that he spoke with Mr. Dew at a local hospital the night of the fire. Mr. Dew was apparently at the Honolulu Mart the day of the fire. Officer Breedlove testified that Mr. Dew was burned on the knee and thigh and that "[i]t had already started to blister and bubble and the meat of the skin was starting to break on his left knee and above on his thigh." The defendant contends that the State produced no competent evidence to support its allegation that a man named Dew was burned as a result of the defendant's acts. The defendant argues that Officer Breedlove's testimony therefore created prejudice to the defendant. Although the officer testified that he took a statement from Mr. Dew on that day, the statement was not read into evidence because the prosecution had failed to give timely written notice pursuant to N.C.G.S. § 8C-1, Rule 804(b)(5). The defendant contends that a curative instruction should have been given following the testimony of Officer Breedlove, although he made no such request at trial.

Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. N.C.G.S. § 8C-1, Rule 401 (1992). Officer Breedlove's testimony concerning Mr. Dew was certainly relevant and admissible to support the charge that the defendant committed an assault with a deadly weapon with intent to kill inflicting serious injury upon Mr. Dew. Furthermore, the trial court's dismissal of the assault indictment at the close of the State's evidence does not affect the admissibility of the evidence.

The defendant says that this testimony also had a prejudicial effect on sentencing since no other evidence before the jury showed that someone other than the victim had been injured in the fire. He says that the testimony provided tainted support for the aggravating circumstance contained in N.C.G.S. § 15A-2000(e)(10), that he "knowingly created a great risk of death to more than one person." This contention has no merit.

First, the defendant testified that there were others in the store the morning of the fire. Lynard Lancaster testified that he and an old man were present in the store when the fire was set and that the man's leg was on fire. Second, the N.C.G.S. § 15A-2000(e)(10) circumstance is concerned with the creation of "a great risk of death to more than one person." The possibility that others would be present in the store when the defendant started the fire satisfies this requirement. It is not necessary to show that more than one person was actually injured. *See State v. Moose*, 310 N.C. 482, 497, 313 S.E.2d 507, 517 (1984). The defendant has not shown prejudice from this testimony.

This assignment of error is overruled.

**[15]** The defendant next assigns error to the court's refusal to give a requested instruction. The defendant requested that the court charge the jury: "You may consider the opinions rendered by expert witnesses regarding those elements." The "elements" to which the defendant was referring were his ability to form specific intent and to premeditate and deliberate. The court did not charge as requested by the defendant, but it did correctly charge at some length as to how expert testimony could be considered. The charge instructed the jury in substance as requested by the defendant. *State v. Patterson*, 335 N.C. 437, 439 S.E.2d 578 (1994).

This assignment of error is overruled.

**[16]** The defendant next contends that the trial court erred in instructing the jury on flight over his objection. He says that there was insufficient evidence to support the instruction and that the erroneous instruction was prejudicial. *State v. Lee*, 287 N.C. 536, 215 S.E.2d 146 (1975).

A flight instruction is proper "[s]o long as there is some evidence in the record reasonably supporting the theory that defendant fled after commission of the crime charged . . . . The fact that there may be other reasonable explanations for defendant's conduct does not render the instruction improper." *State v. Irick*, 291 N.C. 480, 494, 231 S.E.2d 833, 842 (1977). Regardless of the reason for the flight, "the relevant inquiry [is] whether there is evidence that defendant left the scene of the murder and took steps to avoid apprehension." *State v. Levan*, 326 N.C. 155, 165, 388 S.E.2d 429, 434 (1990). Based on the foregoing principles, the defendant's contention that his response to the fire was the natural response of a retarded person from an unexpected result does not negate the evidence of flight.

The evidence in this case shows that the defendant ran from the burning building and went to the house of a girl he knew. By the time he called the police, approximately six or seven hours had passed. The defendant testified that by that time, he knew police had seized his car and were looking for him. Where there is some evidence supporting the theory of the defendant's flight, the jury must decide whether the facts and circumstances support the State's contention that the defendant fled. *State v. Tucker*, 329 N.C. 709, 723, 407 S.E.2d 805, 813 (1991). The trial court did not err in giving this instruction.

This assignment of error is overruled.

**[17]** The defendant next assigns error to the denial of his motion to dismiss the first-degree murder charge. He argues there was insufficient evidence of his specific intent to kill formed after premeditation and deliberation. First, we note that the defendant was convicted of first-degree murder under the felony murder rule, as well as under the theory of premeditation and deliberation. Even if we were to conclude that the evidence of premeditation and deliberation was insufficient, the defendant's conviction for first-degree murder would not be affected. *See State v. Thomas*, 325 N.C. 583, 593, 386 S.E.2d 555, 560-61 (1989). In this case, the evidence of premeditation and deliberation was sufficient.

Considered in the light most favorable to the State, the evidence showed that the defendant and the victim had an altercation a few hours before the arson. The defendant said he was going to "get" the victim and then threw a burning paper bag and gasoline at the victim behind the counter. There was eyewitness testimony that the defendant did not trip, but rather "gush[ed]" the gasoline behind the counter and then threw the container at the victim.

The defendant argues that the witnesses told divergent stories, that he had been drinking and smoking crack on the day of the fire, and that Dr. John Gorman testified that the defendant did not have the capacity to form the specific intent to kill the victim. We note that the jury is not required to accept the opinions or conclusions of a witness, expert or otherwise, regardless of whether he has been impeached. *Maggio v. Fulford*, 462 U.S. 111, 117-18, 76 L. Ed. 2d 794, 800 (1983). We conclude that there was sufficient evidence for a rational juror to find that the defendant acted with the premeditation and deliberation required for a first-degree murder conviction.

This assignment of error is overruled.

STATE v. NORWOOD

[344 N.C. 511 (1996)]

**[18]** The defendant next assigns error to the trial court's failure to sustain his objection on one occasion and intervene *ex mero motu* on two occasions when the prosecutor made "improper and prejudicial" arguments in both the guilt and sentencing phases. *See State v. Britt*, 288 N.C. 699, 712, 220 S.E.2d 283, 291 (1975).

First, the defendant says that the prosecutor argued facts not in evidence during the guilt phase closing arguments. When describing the evidence showing conspiracy, the prosecutor stated, "Right in here somewhere April Fields said, I heard them talking, he said, 'We're in this together, man. You throw the gas on him, I'm going to rob the place.'" The defendant contends this characterization of Fields' testimony was incorrect and damaging to him. To the contrary, although Ms. Fields actually testified that the defendant said, "I am going to get him," the statement attributed to her by the prosecutor was close enough to what the witness said so that there was no error in his statement.

**[19]** Second, the defendant argues that the prosecutor improperly denigrated the credentials of the defendant's expert witness and violated the trial court's ruling during the sentencing phase closing arguments. The prosecutor stated that Dr. Gorman was not a forensic psychiatrist, but a psychologist who "helps children get over divorce." We note that even though the trial court accepted the witness as an expert, the prosecutor's statements were supported by the record. In addition, it is not improper for the prosecutor to impeach the credibility of an expert during his closing argument. *State v. Bacon*, 337 N.C. 66, 90, 446 S.E.2d 542, 554 (1994), *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 1083 (1995).

**[20]** Finally, the defendant argues that the prosecutor misstated the law regarding mitigating circumstances by drawing the jury's attention to the mitigating circumstance: "Any other circumstance or circumstances arising from the evidence which one or more of you deems to having [sic] mitigating value." The prosecutor stated that this circumstance indicated that the defendant was "grasping at straws." We conclude that this argument was not a "depreciation of mitigating evidence so improper that it required *ex mero motu* intervention by the trial court." *State v. Robinson*, 336 N.C. 78, 129, 443 S.E.2d 306, 332 (1994), *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 650 (1995). In addition, the trial court correctly instructed the jury on the mitigating circumstances, including N.C.G.S. § 15A-2000(f)(9), which instructed the jury to consider any other mitigating circumstances

deemed to have mitigating value. This Court presumes that jurors follow the trial court's instructions. *State v. Jennings*, 333 N.C. 579, 618, 430 S.E.2d 188, 208, *cert. denied*, 510 U.S. 1028, 126 L. Ed. 2d 602 (1993).

This assignment of error is overruled.

## SENTENCING PHASE ISSUES

[21] The defendant next assigns error to the denial of his motion for a mistrial and for a new sentencing hearing based on improper questions posed by the prosecutor during the sentencing phase of the trial. The defendant contends that the prosecutor's questions violated the trial court's order limiting any victim-impact material and prejudiced the defendant.

The defendant objected during the sentencing proceeding to the following questions posed to Dee Dee Hicks, the defendant's high school teacher who testified about her opinion of the defendant's ability and character:

Q: Do you think the family and friends of [the victim] thinks [sic] [the defendant] deserves to die for it?

. . . .

Q: Do you think [the defendant] was respectful to [the victim] when he set him on fire and poured a gallon of gasoline on him?

The trial court sustained both objections and allowed both motions to strike. The defendant says that the trial court should have given a curative instruction. We note at the outset that the defendant did not request one and that the "trial court does not err by failing to give a curative jury instruction when, as here, it is not requested by the defense." *State v. Williamson*, 333 N.C. 128, 139, 423 S.E.2d 766, 772 (1992).

A review of the context of the prosecutor's statements reveals that the witness had just stated that the defendant respected her authority and that she did not think he deserved to die for what he had done. The decision of whether to grant a mistrial is within the sound discretion of the trial judge. *State v. Hardison*, 326 N.C. 646, 392 S.E.2d 364 (1990). "[A] mistrial is appropriate only when there are such serious improprieties as would make it impossible to attain a fair and impartial verdict under the law." *State v. Calloway*, 305 N.C.

747, 754, 291 S.E.2d 622, 627 (1982). The defendant has failed to show that the mere asking of the questions to which objections were sustained prejudiced him. *See State v. Knight,* 340 N.C. 531, 459 S.E.2d 481 (1995). It was not error to deny the motion for a mistrial. N.C.G.S. § 15A-1443(a) (1988).

This assignment of error is overruled.

[22] By another assignment of error, the defendant contends that the trial court erred by submitting the aggravating circumstance that "[t]he defendant knowingly created a great risk of death to more than one person by means of a weapon or device which would normally be hazardous to the lives of more than one person." N.G.G.S. § 15A-2000(e)(10). The defendant argues that a can of gasoline is not a weapon that would normally be hazardous to more than one person. He also says that no competent evidence establishes that he was aware or should have been aware of others in the store.

First, the State's evidence showed that the defendant threw a burning paper bag and gasoline into a convenience store during business hours. The store exploded into flames after the defendant had escaped. At least two other persons were in the store at the time. The defendant should have known that his action was hazardous to them.

Regarding the second part of the statute,

> the crucial consideration in determining what type of weapon or device is envisioned by G.S. § 15A-2000(e)(10) is its potential to kill more than one person if the weapon is used in the normal fashion, that is, in the manner for which it was designed. The focus must be upon the destructive capabilities of the weapon or device.

*State v. Moose,* 310 N.C. at 497, 313 S.E.2d at 517. A can of gasoline, when used in conjunction with a burning paper bag, constitutes a device that has the potential to kill more than one person.

This assignment of error is overruled.

### PRESERVATION ISSUES

The defendant brings forth additional assignments of error for preservation purposes. As we have previously decided the issues adversely to the defendant's position, we will not revisit those questions.

STATE v. NORWOOD

[344 N.C. 511 (1996)]

## PROPORTIONALITY REVIEW

[23] Having determined that there was no error in the defendant's trial and capital sentencing proceeding, we are required to determine (1) whether the record supports the jury's finding of the aggravating circumstances upon which the sentence of death was imposed; (2) whether the sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor; and (3) whether the sentence is excessive or disproportionate to the penalty imposed in the pool of similar cases, considering both the crime and the defendant. N.C.G.S. § 15A-2000(d)(2); *State v. Robbins*, 319 N.C. 465, 356 S.E.2d 279, *cert. denied*, 484 U.S. 918, 98 L. Ed. 2d 226 (1987).

The jury in this case found the defendant guilty of first-degree murder under the theory of premeditation and deliberation, as well as under the felony murder rule. It also found him guilty of willfully burning a building. The jury found two aggravating circumstances: that the murder was especially heinous, atrocious, or cruel, N.C.G.S. § 15A-2000(e)(9), and that the defendant knowingly created a great risk of death to more than one person by means of a weapon which would normally be hazardous to the lives of more than one person, N.C.G.S. § 15A-2000(e)(10).

We conclude that the evidence supports both circumstances. The victim in this case was burned alive and suffered for twelve hours before he died. This evidence was sufficient to support the jury's finding of the aggravating circumstance in N.C.G.S. § 15A-2000(e)(9). As we discussed above, the evidence was also sufficient to support the aggravating circumstance in N.C.G.S. § 15A-2000(e)(10).

Having thoroughly examined the record, transcripts, and briefs in this case, we further conclude that there was no indication that the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor.

We now turn to our final statutory duty of conducting a proportionality review. One purpose of proportionality review "is to eliminate the possibility that a person will be sentenced to die by the action of an aberrant jury." *State v. Holden*, 321 N.C. 125, 164-65, 362 S.E.2d 513, 537 (1987), *cert. denied*, 486 U.S. 1061, 100 L. Ed. 2d 935 (1988). Another is to guard "against the capricious or random imposition of the death penalty." *State v. Barfield*, 298 N.C. 306, 354, 259 S.E.2d 510, 544 (1979), *cert. denied*, 448 U.S. 907, 65 L. Ed. 2d 1137 (1980). We compare this case to others in the pool (which we defined

in *State v. Williams,* 308 N.C. 47, 79-80, 301 S.E.2d 335, 355, *cert. denied,* 464 U.S. 865, 78 L. Ed. 2d 177 (1983), and *State v. Bacon,* 337 N.C. at 106-07, 446 S.E.2d at 563-64) that "are roughly similar with regard to the crime and the defendant." *State v. Lawson,* 310 N.C. 632, 648, 314 S.E.2d 493, 503 (1984), *cert. denied,* 471 U.S. 1120, 86 L. Ed. 2d 267 (1985). Whether the death penalty is disproportionate "ultimately rest[s] upon the 'experienced judgments' of the members of this Court." *State v. Green,* 336 N.C. 142, 198, 443 S.E.2d 14, 47, *cert. denied,* —— U.S. ——, 130 L. Ed. 2d 547 (1994).

This case has several distinguishing characteristics. First, the defendant was found guilty of first-degree murder based on both the felony murder rule and on premeditation and deliberation. "The finding of premeditation and deliberation indicates a more cold-blooded and calculated crime." *State v. Artis,* 325 N.C. at 341, 384 S.E.2d at 506. Further, the jury found the murder to be especially heinous, atrocious, or cruel. Also, the victim suffered great physical pain in that he was burned alive and survived for twelve hours, knowing that death was imminent.

This Court gives great deference to a jury's recommendation of a death sentence. *State v. Quesinberry,* 325 N.C. 125, 145, 381 S.E.2d 681, 694 (1989), *sentence vacated on other grounds,* 494 U.S. 1022, 108 L. Ed. 2d 603 (1990). In only seven cases have we found a death sentence disproportionate: *State v. Benson,* 323 N.C. 318, 372 S.E.2d 517 (1988); *State v. Stokes,* 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers,* 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Vandiver,* 321 N.C. 570, 364 S.E.2d 373 (1988); *State v. Young,* 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill,* 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant,* 309 N.C. 674, 309 S.E.2d 170 (1983); and *State v. Jackson,* 309 N.C. 26, 305 S.E.2d 703 (1983).

We find the instant case distinguishable from each of these. None involved a defendant who deliberately burned the victim to death. None included the aggravating circumstance that the defendant "knowingly created a great risk of death to more than one person by means of a weapon or device which would normally be hazardous to the lives of more than one person." Furthermore, only two of these cases involved the "especially heinous, atrocious, or cruel" aggravating circumstance, but neither is similar to this case.

In *State v. Stokes,* 319 N.C. 1, 352 S.E.2d 653, the victim was part of a gang of four men who robbed and beat the victim, but the evi-

dence failed to establish exactly which members engaged in the beating. Also, there was virtually no evidence of premeditation and deliberation. Stokes was convicted of first-degree murder under the felony murder rule, and the jury found only one aggravating circumstance. This Court also considered that one of Stokes's accomplices, who had committed the same crime, was sentenced to life imprisonment. The defendant contends that his sentence is disproportionate because Herb Joyner was allowed to plead to accessory before the fact to second-degree murder, even though he was no less culpable than the defendant. The defendant says that, if anything, he was less deserving of death than Joyner. The evidence in this case does not support the defendant's contention. Here, there was eyewitness testimony from a customer in the store that the defendant carried the jug of gasoline into the store and doused the victim with it. Two witnesses testified that the defendant was also the one who threw the lit paper bag into the store. Furthermore, this case is distinguishable from *Stokes* because the jury in this case found two aggravating circumstances, and the defendant was convicted of first-degree murder under the theories of premeditation and deliberation and felony murder.

In *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170, we attached significance to the fact that after the defendant shot the victim from his car, the defendant exhibited concern for the victim's life and remorse for his action by directing the driver of the car to the hospital immediately after the shooting. The defendant accompanied the victim into the hospital to secure medical treatment for him and confessed to police. The defendant in this case did not show such remorse. We have found lack of remorse or pity and the defendant's cool actions after the murder to be indications that the death sentence was not disproportionate. *State v. Syriani*, 333 N.C. 350, 428 S.E.2d 118, *cert. denied*, 510 U.S. 948, 126 L. Ed. 2d 341 (1993). In this case, the defendant, having set the victim on fire, did nothing to procure medical assistance, to inquire into the victim's condition, or to express remorse to the victim. In his own words, he stood and watched the victim burn and then left the scene. The defendant went to a friend's house and did not call the police until several hours later.

The defendant concedes that the victim in this case died in a gruesome manner, lingering for long hours knowing that death was imminent. He says that no "normal, reasonably intelligent[] adult could fail to appreciate the horror that would inevitably ensue from combining gasoline and fire." He says, however, that he is not "normal." As we

have discussed above, the defendant's mental status does not render the death sentence disproportionate.

We hold that the defendant received a trial and capital sentencing proceeding free from prejudicial error, that the jury did not sentence the defendant out of prejudice or passion, and that the sentence is proportionate.

NO ERROR.