STATE OF NORTH CAROLINA v. JOHNATHON GREGORY HOFFMAN

No. 313A97

(Filed 9 October 1998)

**1. Jury § 227 (NCI4th)— jury selection—death penalty views—conflicting responses—excusal for cause**

The trial court did not abuse its discretion in excusing a prospective juror for cause in a capital sentencing proceeding based upon her death penalty views where she gave conflicting responses to *voir dire* questions in that she stated on numerous occasions that she did not believe in the death penalty, that she

could not consider the death penalty as an appropriate punishment, and that her views would substantially impair the performance of her duties as a juror, but she also stated that she could set aside her views and consider death as a possible punishment.

**2. Jury § 187 (NCI4th)— challenge for cause—different grounds on appeal—question not presented**

Defendant did not properly preserve for appellate review the question of the trial court's refusal to excuse a prospective juror for cause where defendant is arguing on appeal completely different grounds in support of his challenge for cause than he argued in the trial court. N.C. R. App. P. 10(b)(1).

**3. Jury § 194 (NCI4th)— prospective juror—conversation with police officer—denial of challenge for cause**

The trial court did not abuse its discretion in the denial of defendant's challenge for cause of a prospective juror in this capital sentencing proceeding after defense counsel reported that a prospective juror was seen conversing with a police officer during a recess where the court conducted an inquiry into the matter; the officer explained that he was telling a story about a time when his father was called for jury duty and he had a case in court and that he did not discuss defendant's case with the prospective juror; the juror stated that she had not discussed defendant's case with the officer and had not been influenced with regard to defendant's case during the conversation; and the trial court was satisfied that the prospective juror could be fair and impartial.

**4. Evidence and Witnesses § 2956 (NCI4th); Constitutional Law § 349 (NCI4th)— corroborating witness—pending criminal charges—denial of cross-examination—harmless error**

Although the trial court erred by not allowing defendant to cross-examine a State's witness regarding pending charges against him for breaking and entering, defendant was not denied the right of effective cross-examination, and the error was harmless, where the witness was not a principal witness for the State but was only a corroborating witness; the witness was thoroughly impeached by cross-examination about his prior crimes and convictions and about several prior inconsistent statements; and the State presented substantial evidence of defendant's guilt aside from the witness's testimony. U.S. Const. amend. VI.

5. **Evidence and Witnesses § 221 (NCI4th)— car defendant driving on crime date—ticket two days later—relevancy— exclusion as harmless error**

In a prosecution for armed robbery and first-degree murder in which the State presented evidence that defendant was seen sitting in his white car outside the victim's jewelry store on the day of the murder, and defendant attempted to prove that he was driving his sister's red car and she was driving his car on the date of the murder, any error in the trial court's exclusion of testimony by defendant's sister that defendant got a ticket while driving her car two days after the murder was not prejudicial since the State presented substantial evidence tending to show defendant's guilt; the excluded testimony would not necessarily negate evidence that defendant was driving his own car two days earlier when the murder was committed; and the value of the testimony of defendant's sister was diminished substantially when she admitted on cross-examination that she had never told a law officer that she had defendant's car on the day of the murder, and she was unsure of the basic features of the car, such as whether it had an automatic or manual transmission, although she stated that she drove it for several weeks.

6. **Evidence and Witnesses § 310 (NCI4th)— robbery-murder—other robberies by defendant—identity of perpetrator**

Testimony by a witness that defendant had participated in two bank robberies with him during the two months preceding a robbery-murder at a jewelry store was admissible to show defendant's identity as the perpetrator of the jewelry store crimes where defendant drove his white Nissan in the bank robberies, while a white Nissan was seen outside the jewelry store on the day of the murder; defendant's sawed-off shotgun and ski mask were used in the bank robberies, and the perpetrator of the jewelry store crimes wore a ski mask and carried a sawed-off shotgun; the banks and the jewelry store were all located in small towns surrounding Charlotte; and all of the establishments were robbed during the daytime when they were open for business.

7. **Criminal Law § 472 (NCI4th Rev.)— prosecutor's closing argument—burden of proving malice—harmless error**

Assuming *arguendo* that it was error for the prosecutor to state during his argument on malice that "there is no just cause,

there is no excuse, there is no justification in this case. Make them tell you where it is," defendant was not prejudiced where the prosecutor told the jury that the State had to prove malice, and the trial court properly instructed that the prosecutor had the burden of proof as to malice.

**8. Criminal Law § 475 (NCI4th Rev.)— prosecutor's closing argument—silence**

The prosecutor's use of two minutes of silence to emphasize to the jury in a capital trial how long the victim spent bleeding on the floor before he died was not so grossly improper as to require *ex mero motu* intervention by the trial court.

**9. Criminal Law § 475 (NCI4th Rev.)— prosecutor's closing argument—victim not on trial—no gross impropriety**

The prosecutor's closing argument in a capital trial which merely reminded the jury that it was defendant, not the victim, who was on trial was not grossly improper as to merit *ex mero motu* intervention by the trial court.

**10. Criminal Law § 471 (NCI4th Rev.)— capital sentencing— prosecutor's closing argument—misstatement of evidence—not prejudicial error**

The prosecutor's single reference in his closing argument in a robbery-murder case to "hundreds of rings" that were recovered without any indication of how this evidence supported defendant's guilt, if a misstatement of the evidence, could not have affected the verdict and was not prejudicial error.

**11. Criminal Law § 1374 (NCI4th Rev.)— capital sentencing—prior robberies—course of conduct aggravating circumstance**

Evidence of defendant's participation in two bank robberies in the two months preceding the robbery-murder at issue was sufficient to support the trial court's submission of the course of conduct aggravating circumstance to the jury since the span of time was not so great as to prevent the crimes from being considered part of the same course of conduct, and there was a similar *modus operandi* employed in the crimes. N.C.G.S. § 15A-2000(e)(11).

**12. Criminal Law § 475 (NCI4th Rev.)— capital sentencing— prosecutor's closing argument—taking victim's life without trial**

The prosecutor's closing argument in a capital sentencing proceeding commenting on the fact that defendant took the victim's life without the benefit of a trial was not an attack on defendant's exercise of his constitutional rights and was not improper.

**13. Criminal Law § 460 (NCI4th Rev.)— capital sentencing— prosecutor's closing argument—punishment chosen by defendant—absence of prejudice**

Defendant was not prejudiced by the prosecutor's closing argument in a capital sentencing proceeding that, when defendant made the decision to rob and shoot the victim, "he chose the punishment he's going to get for this crime" where the trial court properly instructed the jury following this argument, as well as during its jury instructions, that it was the jury's duty, not defendant's, to determine the punishment.

**14. Criminal Law § 458 (NCI4th Rev.)— capital sentencing— prosecutor's closing argument—mitigating circumstances**

The prosecutor's closing argument in a capital sentencing proceeding that "[t]hey can drag up anything they think has mitigating value. But just because they say it doesn't make it so" did not improperly inform the jury that defendant could submit any matter as a mitigating circumstance; rather, the prosecutor was merely arguing that the jury had to decide for itself whether the matters submitted by defendant were mitigating. Assuming, *arguendo* that the argument was improper, defendant was not prejudiced thereby.

**15. Criminal Law § 460 (NCI4th Rev.)— capital sentencing— prosecutor's closing argument—not perversion of concept of mitigation**

The prosecutor's closing argument in a capital sentencing proceeding that if the jury feels "that you should be merciful and not follow the law and just make a choice like [defendant] made when he pulled that trigger, then it's your conscience you have to live with. But if you do what you have all sworn to do, that is, follow the law, you will return a verdict recommending this man be sentenced to death" did not improperly equate mercy with lawlessness and pervert the concept of mitigation; rather, the argu-

ment attempts to reinforce the responsibility of the jury to reach its decision based on the evidence and the law.

**16. Criminal Law § 448 (NCI4th Rev.)— capital sentencing— prosecutor's closing argument—jury's role in law enforcement system**

The prosecutor's closing argument in a capital sentencing proceeding that the thin blue line (police officers) is what keeps persons like defendant out of your home, business, and community, that the jury is the anchor for the thin blue line, that there is no law or order without the jury, and that the jury should "follow the law" did not impermissibly urge the jurors to imagine they were potential crime victims and ask the jury to remedy societal problems via general deterrence. Taken in context, the argument sought to illustrate the importance of the jury's role within the system of law enforcement and was not improper.

**17. Criminal Law § 1402 (NCI4th Rev.)— death penalty not disproportionate**

A sentence of death imposed upon defendant for first-degree murder was not excessive or disproportionate where this case involved a robbery during which defendant shot and killed the victim; defendant was convicted of armed robbery and of first-degree murder on the basis of premeditation and deliberation and the felony murder rule; the jury found as aggravating circumstances that defendant had been previously convicted of a violent felony, that the murder was committed for pecuniary gain, and that the murder was part of a course of conduct including other violent crimes; and the jury found no mitigating circumstances.

Justice WYNN did not participate in the consideration or decision of this case.

Appeal of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Helms (William H.), J., on 14 November 1996 in Superior Court, Union County, upon a jury verdict finding defendant guilty of first-degree murder. Defendant's motion to bypass the Court of Appeals as to an additional judgment was allowed 5 December 1997. Heard in the Supreme Court 26 May 1998.

*Michael F. Easley, Attorney General, by Mary D. Winstead, Assistant Attorney General, for the State.*

*Center for Death Penalty Litigation, by Staples Hughes, Staff Attorney, for defendant-appellant.*

STATE v. HOFFMAN

[349 N.C. 167 (1998)]

WHICHARD, Justice.

On 22 January 1996 defendant was indicted for robbery with a dangerous weapon and the first-degree murder of Danny Cook, both occurring on 27 November 1995. Defendant was tried capitally, and the jury returned verdicts finding him guilty of robbery with a firearm and first-degree murder based on premeditation and deliberation as well as the felony murder rule. Following a capital sentencing proceeding pursuant to N.C.G.S. § 15A-2000, the jury recommended that defendant be sentenced to death. The trial court sentenced defendant accordingly, and further sentenced him to 101 to 131 months' imprisonment for the robbery with a dangerous weapon conviction. Defendant appealed the first-degree murder conviction to this Court, and we allowed defendant's motion to bypass the Court of Appeals on the robbery with a dangerous weapon conviction.

In an opinion filed 9 July 1998, this Court remanded the case to the Superior Court, Union County, for a hearing as to whether defendant's jury had been selected contrary to the equal protection principles set forth in *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69 (1986). *State v. Hoffman*, 348 N.C. 548, 500 S.E.2d 718 (1998). A hearing was held, and an order was entered on 24 August 1998. The trial court concluded that the State had offered valid, race-neutral explanations for its peremptory challenges of prospective jurors James Rorie and Lori Brace and that defendant had failed to meet his ultimate burden of proof of showing purposeful racial discrimination in the challenging of these prospective jurors. The transcript contains evidence that supports the trial court's findings, and the findings in turn support its conclusions. This assignment of error is therefore overruled, and the case is before this Court for review of defendant's remaining assignments of error.

The evidence presented at trial tended to show that between 3:30 and 4:00 p.m. on 27 November 1995, defendant entered a jewelry store in Marshville, North Carolina, wearing a ski mask and carrying a sawed-off shotgun. Danny Cook, the victim, was behind the store's display counter when he saw defendant enter. Defendant shot the victim in the chest from a distance of about three feet. Defendant then broke three glass display cases and took various items of jewelry, including some gold rings and necklaces. Defendant also stole two pistols.

[1] In defendant's first assignment of error, he contends that prospective juror Josephine McLemire was improperly excused for

cause. Defendant argues that while McLemire may have shown some opposition to the death penalty, she did not demonstrate sufficient opposition to warrant a for-cause removal.

The standard for determining when a prospective juror may be excluded for cause because of his or her views on capital punishment is "whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" *Wainwright v. Witt*, 469 U.S. 412, 424, 83 L. Ed. 2d 841, 851-52 (1985) (quoting *Adams v. Texas*, 448 U.S. 38, 45, 65 L. Ed. 2d 581, 589 (1980)). When McLemire was first asked about her ability to return a guilty verdict knowing that death was a possible sentence, she said she did not know whether she could return such a verdict. After time to think about the question, McLemire said she could "fairly consider death as a possible sentence in this case." Before defendant finished questioning the prospective jurors in McLemire's panel, the court excused the prospective jurors and adjourned for the day. Defendant continued his questioning of these jurors the next day. When defendant asked McLemire how long she had held her belief in the death penalty, she replied, "Well, I really don't believe in it. I slept on it last night and I'm still undecided." Upon further questioning by the trial court, McLemire stated that she could not consider the death penalty as an appropriate punishment. She further stated that she would find herself to be substantially impaired in her ability to perform her duties as a juror. In response to questioning by the State, she again stated that if her duty as a juror required her to sentence defendant to death, she would be substantially impaired in performing her duty.

At that point the State challenged McLemire for cause. The trial court allowed defendant's request to question her further. Defendant asked her whether she believed in the death penalty. She said she did not. McLemire then told defendant she could apply the law to the case without her personal beliefs substantially impairing her ability to follow the law. The trial court then asked, "But you still couldn't come back and consider a death penalty as one of the appropriate punishments in the case?" McLemire replied that she could not. The trial court continued its questioning. She told the trial court that her views on the death penalty would not substantially impair her ability to perform her duties as a juror. She also told the trial court that her views on the death penalty would not interfere with her ability to consider both possible punishments and that, in spite of her views, she could return a sentence of death against defendant. At this point the

trial court allowed the State's for-cause challenge, agreeing that her answers were "obviously equivocal."

Defendant argues that McLemire should not have been excused for cause because while her answers revealed that she had reservations about the death penalty, she also stated that these views would not impair her ability to consider that penalty in this case. In support of his argument, defendant cites the following:

> [T]he Constitution [does not] permit the exclusion of jurors from the penalty phase of a . . . murder trial if they aver that they will honestly find the facts and answer the [capital sentencing] questions in the affirmative if they are convinced beyond a reasonable doubt, but not otherwise, *yet who frankly concede that the prospects of the death penalty may affect what their honest judgment of the facts will be or what they may deem to be a reasonable doubt.*

*Adams v. Texas*, 448 U.S. at 50, 65 L. Ed. 2d at 593 (emphasis added). Defendant argues that McLemire falls into the above class of prospective jurors and that she therefore was improperly excused for cause.

Five years after *Adams*, the United States Supreme Court decided *Wainwright v. Witt*, 469 U.S. 412, 83 L. Ed. 2d 841, in which it made it clear that a prospective juror's bias does not have to be proven with "unmistakable clarity" in order to justify a for-cause removal. *Id.* at 424, 83 L. Ed. 2d at 852.

> This is because determinations of juror bias cannot be reduced to question-and-answer sessions which obtain results in the manner of a catechism. What common sense should have realized experience has proved: many veniremen simply cannot be asked enough questions to reach the point where their bias has been made "unmistakably clear"; these veniremen may not know how they will react when faced with imposing the death sentence, or may be unable to articulate, or may wish to hide their true feelings. Despite this lack of clarity in the printed record, however, there will be situations where the trial judge is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law. . . . [T]his is why deference must be paid to the trial judge who sees and hears the juror.

*Id.* at 424-26, 83 L. Ed. 2d at 852-53 (footnote omitted). This Court has likewise held that the granting of a challenge for cause based on a

prospective juror's unfitness is a matter within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. *State v. Abraham,* 338 N.C. 315, 343, 451 S.E.2d 131, 145 (1994).

McLemire stated on numerous occasions that she did not believe in the death penalty and that her views would substantially impair the performance of her duties as a juror. The trial court had to decide whether a number of contradictory responses by this prospective juror were sufficient to defeat the State's for-cause challenge. After watching and listening to this prospective juror, the trial court concluded that McLemire's answers during *voir dire* provided a sufficient basis to allow the State's for-cause challenge. We cannot conclude that the trial court abused its discretion.

Defendant also argues that he should have been allowed to question McLemire again before she was excused for cause. We have stated that "[i]t is not an abuse of discretion for the trial court to deny defendant an attempt to rehabilitate a juror unless defendant can show that further questions would have produced different answers by the juror." *State v. Cummings,* 346 N.C. 291, 313, 488 S.E.2d 550, 563 (1997), *cert. denied,* —— U.S. ——, 139 L. Ed. 2d 873 (1998). The trial court had already allowed defendant one attempt to rehabilitate this prospective juror. Defendant has not shown that additional questioning of McLemire would likely have produced different results. This assignment of error is overruled.

[2] Defendant next contends that juror Howard Setzer, a Charlotte police officer, should have been excused for cause. Setzer stated that he had heard about defendant's case briefly in the course of his employment but had not formed an opinion about it. Upon questioning by defendant, Setzer stated that he would tend to find "an officer to be a more credible witness simply based on the fact that he's an officer, as opposed to any other witness." Defendant argues that Setzer's response shows that he could not be an impartial juror and thus should have been excused for cause. However, defendant did not make a for-cause challenge of Setzer at this point in the *voir dire.* Further, at no point during jury selection did defendant assert this argument as a basis for his for-cause challenge. Instead, defendant continued questioning Setzer about his experience as a police officer. Finally, defendant asked him, "Mr. Setzer, honestly, wouldn't it be a problem for you to sit in a case like this? . . . A problem in being totally—totally fair, totally impartial, totally unbiased against a

defendant in a case?" Setzer responded, "I could follow the law in this case and I could do my duty as a juror."

It was not until after a recess that defendant made his for-cause challenge of Setzer. During this recess Setzer was seen talking to a deputy sheriff who was operating a metal detector. Two other members of the panel, Ann Keziah and Tracy Johnson, were also seen conversing with two police officers. It was at this point, and in light of these observations, that defendant challenged all three prospective jurors, Setzer, Keziah, and Johnson, for cause. After an inquiry into the matter, the trial court determined that Setzer had been talking with the deputy sheriff about a new security device and that defendant had not shown sufficient reason to excuse him for cause.

Rule 10(b)(1) of the North Carolina Rules of Appellate Procedure provides: "In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." On appeal to this Court, defendant is arguing completely different grounds in support of his for-cause challenge of Setzer than he argued to the trial court. The trial court had no opportunity to consider defendant's for-cause challenge in the terms in which he now presents it. Defendant thus did not properly preserve this assignment of error for appellate review, and it is overruled.

[3] Defendant next contends that the trial court erred when it failed to excuse prospective juror Ann Keziah for cause. During the recess mentioned above, prospective jurors Ann Keziah and Tracy Johnson were seen conversing with two police officers in a break room. Defense counsel overhead one of the officers say, "I said, 'That's awesome, Pops. A [sic] least we have one juror that will vote to convict.' " When defense counsel informed the trial court of this incident, the court ordered the officers summoned to the courtroom and conducted an inquiry into the matter.

Officer Rigoli explained that he was telling a story about a time when his father was called for jury duty and he had a case in court. Officer Rigoli told the court:

I was telling her about telling my dad, he got called up, and I had a case coming up and he couldn't get off the jury duty. And so he ended up getting put on jury duty. And I said, "Well, Pop", I said, "If I come up and you got one of my cases, you know, I may end

up looking like an idiot, because I'm just a dumb poor boy from the country, and, heck fire, if my own dad won't vote for me, then I need to drop back in something and be a meter reader or something.

Officer Rigoli said that he had not discussed defendant's case with prospective juror Keziah.

The trial court then questioned Keziah. She said that she had not discussed defendant's case with the officers and that she had not been influenced in any way with regard to defendant's case during the conversation. The trial court next questioned prospective juror Johnson. She said that she had not been a part of the conversation in the break room and that she had heard nothing which would have influenced her with regard to defendant's case. After talking with these individuals, the trial court was satisfied that Keziah and Johnson could be fair and impartial. It therefore denied defendant's for-cause challenges.

Defendant argues that this was error with regard to Keziah. Defendant notes inconsistencies between the accounts of what happened given by Officer Rigoli and prospective jurors Keziah and Johnson. Officer Rigoli testified that he had not known that Keziah was on the jury when he related the story about his father, while both Keziah and Johnson stated that they believed Officer Rigoli knew Keziah was on the jury at the time. Also, Keziah said that she did not remember laughter, while both Officer Rigoli and prospective juror Johnson reported that there had been laughter in response to what was said. Defendant argues that the trial court ended its inquiry into the matter too quickly and that

> it is entirely possible that the officers talked to a potential juror about the defendant's case knowing that she was a juror and intending to encourage her, subtly or otherwise, to vote to convict a defendant on trial for the murder of a citizen of the county in which they worked.

We have stated that "[w]hen there is substantial reason to fear that the jury has become aware of improper and prejudicial matters, the trial court must question the jury as to whether such exposure has occurred and, if so, whether the exposure was prejudicial." *State v. Black*, 328 N.C. 191, 196, 400 S.E.2d 398, 401 (1991). That is precisely what the trial court did. It is also well settled that rulings on challenges for cause are matters in the discretion of the trial court

and will not be overturned on appeal absent a showing of an abuse of discretion. *State v. Quick*, 329 N.C. 1, 17, 405 S.E.2d 179, 189 (1991). We give deference to the ruling of the trial court because it "has the opportunity to see and hear a juror and has the discretion, based on its observations and sound judgment, to determine whether a juror can be fair and impartial." *State v. Dickens*, 346 N.C. 26, 42, 484 S.E.2d 553, 561 (1997).

The trial court in this case was in the best position to observe the demeanor of these witnesses as they gave their sworn testimony. It did not abuse its discretion. This assignment of error is overruled.

**[4]** Defendant next contends that the trial court erred by sustaining one of the State's objections during defendant's cross-examination of Donald Pearson. Pearson provided several pieces of corroborating testimony for the State. He testified that he had seen defendant's sawed-off shotgun in his father's bedroom days before the shooting. This corroborated the testimony of Pearson's father, Willie Pearson, that defendant had stored the gun at his house and had retrieved it from his bedroom on the morning of the crime. Donald Pearson also testified that he saw defendant at his father's house on the afternoon of the murder, that defendant was placing jewelry in a green bag, and that his father told him defendant had robbed a jewelry store. This also corroborated Willie Pearson's testimony.

During defendant's cross-examination of Donald Pearson, defendant asked, "[W]hat other offenses—what other record do you have?" Pearson answered, "Basically that's it except I'm being accused for a B and E." After questioning Pearson about another offense, defendant asked, "The, uh—you have a pending breaking and entering, is that right?" At this point the State objected. The trial court sustained the objection. Defendant argues this was a violation of the Confrontation Clause of the Sixth Amendment of the United States Constitution. We agree.

In *Davis v. Alaska*, 415 U.S. 308, 39 L. Ed. 2d 347 (1974), the United States Supreme Court addressed a similar situation in which the principal witness against the defendant was on probation. The defendant was not allowed to cross-examine the witness about his probationary status. *Id.* at 310-11, 39 L. Ed. 2d at 350-51. The Court held that this limitation on cross-examination was a violation of the defendant's Sixth Amendment right "to be confronted with the witnesses against him." *Id.* at 315, 39 L. Ed. 2d at 353. The Court reasoned that "[t]he claim of bias which the defense sought to develop

was admissible to afford a basis for an inference of undue pressure because of Green's vulnerable status as a probationer as well as of Green's possible concern that he might be a suspect in the investigation." *Id.* at 317-18, 39 L. Ed. 2d at 354 (citation omitted). The Court concluded that the defendant was thus denied the right of effective cross-examination and that this was constitutional error that no showing of want of prejudice could cure. *Id.* at 318, 39 L. Ed. 2d at 355.

This Court has applied *Davis* in a situation similar to the case at bar. In *State v. Prevatte*, 346 N.C. 162, 484 S.E.2d 377 (1997), we held that the trial court erred when it did not allow the defendant to cross-examine the State's principal witness regarding nine pending charges of forgery and uttering forged checks. *Id.* at 163-64, 484 S.E.2d at 378. Likewise, we hold that the trial court here erred by not allowing defendant to cross-examine Pearson regarding his pending charges for breaking and entering. We conclude, however, that this error was harmless beyond a reasonable doubt.

As stated by the Supreme Court in *Davis*, the denial of the "right of *effective* cross-examination" cannot be cured by a showing of lack of prejudice. *Davis*, 415 U.S. at 318, 39 L. Ed. 2d at 355 (emphasis added). This rule has its roots in *Brookhart v. Janis*, a case in which the defendant was completely denied the opportunity to cross-examine the State's witnesses. *Brookhart v. Janis*, 384 U.S. 1, 2-3, 16 L. Ed. 2d 314, 316-17 (1966). *Davis*, however, dealt not with a total denial of cross-examination, but rather with a significant limitation on the defendant's cross-examination of the State's principal witness. The defendant in *Davis* was prevented from showing possible bias by inquiring into the probationary status of "a crucial witness for the prosecution." *Davis*, 415 U.S. at 310, 39 L. Ed. 2d at 350. The Court thus concluded that the defendant had been denied the right of "effective" cross-examination which could not be cured with a showing of lack of prejudice. *Id.* at 318, 39 L. Ed. 2d at 355.

Defendant here was not denied the right of effective cross-examination. The witness, Donald Pearson, was not a principal witness for the State but was a corroborating witness. His minimal importance is evidenced by the fact that the prosecutor scarcely mentioned him in his closing argument. Further, even without inquiry into any pending charges, Pearson was thoroughly impeached on cross-examination. Pearson testified that prior to moving to North Carolina, he lived in New Jersey and made a living robbing drug deal-

ers. He said he had not yet lived in North Carolina long enough to do the same here. He testified that he had been convicted of possession with intent to sell cocaine in New Jersey and North Carolina, that he had been convicted of driving while his license was revoked approximately thirty times, and that he had been convicted of giving fictitious information to an officer. He also testified that he had fired a sawed-off shotgun at a woman who insulted him and had stolen a ring from his father. Finally, Pearson was also cross-examined about several prior inconsistent statements.

In addition, the State presented substantial evidence of defendant's guilt aside from Pearson's testimony. Two witnesses testified that they saw defendant parked outside the victim's jewelry store just before the murder. Defendant's cousin and former partner in crime, Johnell Porter, testified that defendant had tried to get him to rob the store with him. Both Porter and Willie Pearson testified that defendant admitted the murder to them. Willie Pearson also testified that the property the officers recovered from various individuals—the jewelry, the victim's handgun, and the sawed-off shotgun—was all given to him by defendant. The robbery was also consistent with prior bank robberies which Porter testified defendant had committed with him. Finally, physical evidence from the crime scene, such as pieces of wood from the shotgun and green fabric from a gym bag, was also consistent with what Willie Pearson told the officers defendant had told him.

In light of the above, we conclude that although the trial court erred by not allowing defendant to cross-examine Pearson regarding his pending charges, this error was harmless beyond a reasonable doubt. This assignment of error is overruled.

[5] Defendant next contends that the trial court erred by sustaining one of the State's objections during defendant's direct examination of defendant's sister, Wandra Hoffman. The State presented evidence tending to show that defendant had been sitting in his white Nissan outside the victim's jewelry store on the day of the murder. Defendant attempted to prove that he had not been driving his white Nissan that day but had been driving his sister's car, a red Toyota. During defendant's direct examination of Wandra Hoffman, the following exchange took place:

Q Tell the jury whether or not your brother was using that car [his white Nissan] on November the 29th of 1995, Wednesday.

A No. I don't recall him having that car then.

Q You had the car at that time?

A I believe I did. I'm not approximately for sure, but I believe I did.

Q Well, tell the jury whether or not your brother got a ticket driving your car on November the 29th, 1995.

A Yes, he did.

MR. HONEYCUTT: Your Honor, we object on the grounds of relevancy.

THE COURT: Sustained.

Defendant argues this evidence was relevant because it tended to prove that the period during which defendant's sister had his car extended beyond the date of the shooting.

Assuming *arguendo* that this evidence should have been admitted, defendant has failed to show prejudice. To show prejudice, a defendant must establish that "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C.G.S. § 15A-1443(a) (1997). As described in the preceding issue, the State presented substantial evidence tending to show defendant's guilt. Further, testimony that defendant had his sister's car on 29 November would not necessarily negate the fact that he was driving his own car two days earlier when the murder was committed. It is equally plausible that if defendant had his sister's car on 29 November, he borrowed it after 27 November so he would not be seen driving the car he had used to commit his crimes on 27 November. Finally, the value of Wandra Hoffman's testimony was diminished substantially on cross-examination. She admitted that she had never told a law enforcement officer that she had defendant's white car on the day of the murder. She was also unsure of basic features of the car, such as whether it had an automatic or manual transmission, although she said she drove it for several weeks. For these reasons, there is no reasonable possibility that a different result would have been reached had the State's objection not been sustained. This assignment of error is overruled.

[6] Defendant next contends the trial court erred by allowing the State to present evidence of defendant's prior crimes. Defendant's

cousin, Johnell Porter, testified that defendant had participated in two bank robberies with him during the two months preceding the crimes at issue. Defendant argues this evidence should have been excluded pursuant to Rule 404(b) because it was probative only of defendant's propensity to commit robberies.

Rule 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C.G.S. § 8C-1, Rule 404(b) (Supp. 1997). This Court has stated:

Rule 404(b) state[s] a clear general rule of *inclusion* of relevant evidence of other crimes, wrongs or acts by a defendant, subject to but *one exception* requiring its exclusion if its *only* probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged.

*State v. Coffey*, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990).

The trial court conducted a *voir dire* on the State's proffered evidence of defendant's past crimes. It concluded that the evidence was admissible for the purpose of establishing identity and that its probative value was not substantially outweighed by the danger of unfair prejudice. The trial court instructed the jury, both at the time the evidence was admitted and in its charge, that the evidence was relevant only to the question of identity.

We have stated as to the use of other-crimes evidence to prove identity:

The other crime may be offered on the issue of defendant's identity as the perpetrator when the *modus operandi* of that crime and the crime for which defendant is being tried are similar enough to make it likely that the same person committed both crimes. *State v. Moore*, 309 N.C. 102, 305 S.E.2d 542 (1983). This theory of admissibility requires "some unusual facts present in both crimes or particularly similar acts which would indicate that the same person committed both crimes." *Id.* at 106, 305 S.E.2d at 545.

*State v. Carter*, 338 N.C. 569, 588, 451 S.E.2d 157, 167 (1994), *cert. denied*, 515 U.S. 1107, 132 L. Ed. 2d 263 (1995). Porter testified that in both of the prior robberies, defendant drove his white Nissan and provided Porter with a sawed-off shotgun and a dark-blue ski mask. Defendant waited in the car while Porter and another man robbed the banks, and then defendant drove his two companions from the banks.

There are obvious similarities between these bank robberies and the crimes at issue here. Defendant drove his white Nissan in the bank robberies, while here a white Nissan was seen outside the jewelry store on the day of the murder. Defendant's sawed-off shotgun and ski mask were used in the bank robberies, and the perpetrator here wore a ski mask and carried a sawed-off shotgun. The banks and the jewelry store were all located in small towns surrounding Charlotte. Finally, all of the establishments were robbed during the daytime when they were open for business. The trial court properly concluded that Rule 404(b) did not preclude admission of this evidence for the purpose of proving the identity of the perpetrator of these crimes.

Defendant argues further that this evidence should have been excluded pursuant to Rule 403, which provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. N.C.G.S. § 8C-1, Rule 403 (1992). "Whether to exclude evidence under Rule 403 is a matter left to the sound discretion of the trial court. . . . Evidence which is probative of the State's case necessarily will have a prejudicial effect upon the defendant; the question is one of degree." *Coffey*, 326 N.C. at 281, 389 S.E.2d at 56 (citations omitted). The trial court did not abuse its discretion by admitting this evidence and limiting the jury's consideration of it to the question of identity. This assignment of error is overruled.

[7] Defendant next contends that the trial court erred by allowing the prosecutor to make several improper and prejudicial statements to the jury during his closing argument in the guilt-innocence phase. First, defendant complains that the State improperly argued that defendant should have to bear the burden of persuading the jury that the evidence did not establish malice. The prosecutor argued:

> The judge is going to instruct you about malice. He's going to tell you that malice is that condition of the mind in part—that condition of the mind that prompts a person to take the life of

another intentionally without just cause, excuse or justification. Members of the jury, "it was him or me", what this defendant said, "Him or me." There is no just cause, there is no excuse, or there is no justification in this case. Make them tell you where it is.

The trial court overruled defendant's objection to this argument. Defendant contends this was erroneous because the argument sought to remove from the State the burden of proving malice.

Assuming *arguendo* that this was error, there was no prejudice to defendant. The prosecutor told the jury that the State had to prove malice. Further, the trial court properly instructed that the prosecutor had the burden of proof as to malice. This Court presumes that the jury follows the trial court's instructions. *State v. Norwood*, 344 N.C. 511, 537, 476 S.E.2d 349, 361 (1996), *cert. denied,* —— U.S. ——, 137 L. Ed. 2d 500 (1997). Therefore, defendant suffered no prejudice.

**[8]** Defendant next complains of the prosecutor's use of two minutes of silence to emphasize to the jury how long the victim spent bleeding on the floor before he died. Defendant contends this tactic is permissible only in sentencing-phase arguments. Defendant, however, failed to object to this portion of the prosecutor's argument. "In cases where the defendant failed to object at trial, 'the impropriety of the argument must be gross indeed in order for this Court to hold that a trial judge abused his discretion in not recognizing and correcting *ex mero motu* an argument which defense counsel apparently did not believe was prejudicial when he heard it.' " *State v. Holden*, 346 N.C. 404, 430, 488 S.E.2d 514, 528 (1997) (quoting *State v. Johnson*, 298 N.C. 355, 369, 259 S.E.2d 752, 761 (1979)), *cert. denied,* —— U.S. ——, 140 L. Ed. 2d 132 (1998). The prosecutor's use of two minutes of silence was not so grossly improper as to merit *ex mero motu* intervention by the trial court. *See State v. Jones*, 346 N.C. 704, 713-14, 487 S.E.2d 714, 720-21 (1997) (holding that the prosecutor's use of five minutes of silence during its guilt-innocence closing argument was not so grossly improper as to require *ex mero motu* intervention).

**[9]** Defendant next contends that the prosecutor improperly argued for guilt on the basis of victim impact. The prosecutor argued:

The greed by Hoffman's hands took Danny Cook's property. It took Danny's life. It took Danny Cook's gun. It took Danny Cook's grandfather's gun, which was never recovered. He took Danny Cook's life for a few handfuls of rings and jewelry.

**STATE v. HOFFMAN**

[349 N.C. 167 (1998)]

Danny Cook, ladies and gentlemen, lies out there in the cold ground.

[DEFENSE COUNSEL]: Objection.

THE COURT: Overruled.

[PROSECUTOR]: He's gone forever. But forever to be remembered in the tender mercies of his mother's heart. Forever to be remembered for the loving memories of his sister.

That's something he's to be remembered for. He's to be remembered here by me. That's my job. He's to be remembered here by you. It is your duty to remember, ladies and gentlemen, who's on trial in this case. Who's on trial in this case. That this person sitting right here, Greg Hoffman, this is the defendant. This is the man who took Danny Cook's life and took his property. That's who's on trial.

Defendant contends that the prosecutor's argument was inflammatory and that the trial court should have sustained his objection.

Defendant objected when the prosecutor argued that the victim was in the "cold ground." This argument was based on the undisputed evidence that the victim was dead. Defendant failed to object to the remainder of the prosecutor's argument of which he now complains. This argument, taken in context, merely reminded the jury that it was defendant, not the victim, who was on trial. There was nothing so grossly improper in this argument as to merit *ex mero motu* intervention by the trial court.

[10] Finally, defendant contends that the prosecutor argued outside the evidence. The prosecutor argued:

He would have you believe that the Pearson Gang conspired to plant that piece of wood under Danny Cook's body. That the Pearson Gang conspired to give that ring, that one ring out of those hundreds that we recovered, that one ring with a price tag—

[DEFENSE COUNSEL]: Objection, improper statement of evidence.

THE COURT: Overruled.

[PROSECUTOR]: That one ring with Danny Cook's handwriting on it.

Defendant argues that the prosecutor implied that the State had recovered hundreds of rings, which was inaccurate. Defendant contends that, as a result, the jury would naturally have inferred that the State had more evidence of defendant's guilt which it had not introduced.

Assuming *arguendo* that the prosecutor misstated the evidence as described by defendant, there is not a reasonable possibility that a different result would have been reached had the trial court sustained defendant's objection. The State presented substantial evidence of defendant's guilt. A single reference to "hundreds of rings" that were recovered without any indication of how this evidence supported defendant's guilt could not have affected the verdict. This assignment of error is overruled.

[11] Defendant next contends that the trial court erroneously submitted the N.C.G.S. § 15A-2000(e)(11) aggravating circumstance during the penalty phase. This circumstance provides: "The murder for which the defendant stands convicted was part of a course of conduct in which the defendant engaged and which included the commission by the defendant of other crimes of violence against another person or persons." N.C.G.S. § 15A-2000(e)(11) (1997). Defendant argues that the evidence did not support this circumstance. He further argues that any evidence that could have supported this circumstance was used to support other aggravating circumstances which were submitted. Therefore, argues defendant, this evidence could not be used to support the (e)(11) circumstance without being impermissibly duplicative.

Three aggravating circumstances were submitted to the jury: (1) N.C.G.S. § 15A-2000(e)(3), defendant was previously convicted of a violent felony; (2) N.C.G.S. § 15A-2000(e)(6), the murder was committed for pecuniary gain; and (3) N.C.G.S. § 15A-2000(e)(11), the murder was part of a course of conduct involving other violent crimes. The jury found all three aggravating circumstances to exist. In its penalty-phase argument, the prosecutor argued that the (e)(3) circumstance was supported by defendant's convictions for two armed robberies, one occurring in Mecklenburg County in 1976 and the other occurring in South Carolina in 1983. The prosecutor argued that the (e)(6) circumstance was supported by the armed robbery of the jewelry store occurring at the time of the murder. Finally, the prosecutor argued that the (e)(11) circumstance was supported by defendant's participation in two bank robberies in the two months preceding the crimes charged in this case.

Defendant argues that the bank robberies were not sufficiently connected to the crimes charged in this case to support the (e)(11) course-of-conduct aggravating circumstance. Defendant argues further that there was no other evidence which could have been used to support this circumstance. We disagree.

We have explained the law regarding submission of the (e)(11) circumstance as follows:

> In determining whether there is sufficient evidence to submit an aggravating circumstance to the jury, the trial court must consider the evidence in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving all contradictions in favor of the State. . . . In determining whether the evidence tends to show that another crime and the crime for which defendant is being sentenced were part of a course of conduct, the trial court must consider a number of factors, including the temporal proximity of the events to one another, a recurrent *modus operandi*, and motivation by the same reasons.

*Cummings*, 346 N.C. at 328-29, 488 S.E.2d at 572 (citations omitted). The robbery and murder in this case occurred on 27 November 1995. The two bank robberies in which defendant participated occurred on 20 October 1995 and 18 September 1995. This span of time was not so great as to prevent the crimes from being considered part of the same course of conduct. There was also a similar *modus operandi* employed in the crimes. All occurred in small towns around Charlotte, North Carolina. All occurred in daylight hours while the businesses were open. The same sawed-off shotgun, green bag, ski mask, and white Nissan were used in all the crimes. Finally, all the crimes shared the same motive, pecuniary gain.

The evidence of defendant's participation in the two prior bank robberies was sufficient to support the course-of-conduct aggravating circumstance. We thus need not consider whether it would have been impermissibly duplicative for the jury to consider other evidence in support of this circumstance. This assignment of error is overruled.

[12] Defendant next contends that several portions of the State's penalty-phase argument were improper. First, defendant argues that the prosecutor improperly commented on the fact that defendant

took the victim's life without the benefit of a trial. The prosecutor argued:

> No doubt you're going to hear arguments, pleading for the life and for the liberty of this defendant, but, members of the jury, don't forget how this defendant deprived Danny Cook of his life and liberty, and he deprived him of that life and liberty without the benefit of lawyers, without the benefit of a trial,—
>
> [DEFENSE COUNSEL]:  Objection[.]
>
> [PROSECUTOR]:  —without the benefit of the judge, and without the benefit of you citizens. He did it on his own. That's what this defendant did. He took that life on his own and you shouldn't forget it as you go through this.

Defendant contends that this argument was inflammatory and punished him for exercising his right to counsel.

We considered a similar penalty-phase argument in *State v. Walls*, 342 N.C. 1, 463 S.E.2d 738 (1995), *cert. denied*, 517 U.S. 1197, 134 L. Ed. 2d 794 (1996). Here, as in *Walls*, "[w]e do not read into the prosecutor's argument that it was an attack on defendant's exercise of his constitutional rights. The prosecutor merely argued to the jury that defendant, as judge, jury and executioner, single-handedly decided [the victim's] fate." *Id.* at 64, 463 S.E.2d at 772. The trial court did not err by allowing this argument.

[13] Defendant next complains that the prosecutor argued that the only punishment for first-degree murder was the death penalty. The prosecutor argued:

> They may argue to you that don't give him the sentence of death because it may be a mistake. The only mistake made in this case was when Johnathon Gregory Hoffman took this shotgun, rushed into Cook's Jewelry, hit Danny Cook over the head and blew a hole in his chest from three feet away. That's the mistake that's been made and that defendant made it. Nobody else did it, that defendant did. He chose to make this decision consciously and wilfully. You've already convicted him of it. When he chose to make that decision, he chose the punishment he's going to get for this crime.
>
> [DEFENSE COUNSEL]:  Objection.
>
> . . . .

THE COURT: Overruled. It's for you to determine what punishment and not the defendant. Go ahead.

Defendant contends that this argument amounts to instructing the jury that death is the sole punishment for first-degree murder.

The trial court properly instructed the jury following this argument, as well as during its jury instructions, that it was the jury's duty to determine the punishment, not the defendant's. We presume the jury follows the trial court's instructions. *Norwood,* 344 N.C. at 537, 476 S.E.2d at 361. Defendant's argument on this issue is without merit.

**[14]** Defendant next contends the prosecutor improperly informed the jury that there was no limit to the mitigating circumstances defendant could submit to the jury. The prosecutor argued:

Now, there are only eleven aggravating circumstances listed in the law and we have to prove one of those aggravating circumstances. They have no limitation. They can drag up anything that they—

[DEFENSE COUNSEL]: Objection.

THE COURT: Overruled.

[PROSECUTOR]: —think has mitigating value. But just because they say it doesn't make it so.

Defendant contends this argument improperly informed the jury that defendant could submit any matter as a mitigating circumstance. Defendant argues this is not true because a defendant is only entitled to submit matters as mitigating circumstances which "the court deems relevant to sentence." N.C.G.S. § 15A-2000(a)(3).

After the trial court overruled defendant's objection, the prosecutor clarified that there was some limitation to what defendant could submit as a mitigating circumstance; it had to be something he believed had mitigating value. The prosecutor was merely arguing that the jury had to decide for itself whether these matters were mitigating. Even assuming *arguendo* that the jury would have interpreted the prosecutor's argument as described by defendant, defendant has nevertheless failed to show how he was prejudiced by it. To show prejudice, a defendant must show that "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the

appeal arises." N.C.G.S. § 15A-1443(a). Defendant has failed to make this necessary showing.

[15] Defendant next argues that the prosecutor improperly equated mercy with violent lawlessness. The prosecutor argued:

> If you feel sorry or pity on Greg Hoffman, that's all right. If you feel that you should be merciful and not follow the law and just make a choice like Greg Hoffman made when he pulled that trigger, than [sic] it's your conscience you have to live with.

> [DEFENSE COUNSEL]: Objection.

> THE COURT: Overruled.

> [PROSECUTOR]: But if you do what you have all sworn to do, that is, follow the law, you will return a verdict recommending this man be sentenced to death.

Defendant contends that by equating mercy with lawlessness, the prosecutor perverted the concept of mitigation.

This Court considered a similar argument in *State v. Jones*, 336 N.C. 229, 443 S.E.2d 48, *cert. denied*, 513 U.S. 1003, 130 L. Ed. 2d 423 (1994), where the prosecutor argued during the penalty phase:

> You are to perform your duty as a juror in reaching this decision fairly and objectively and without bias or prejudice, passion or any other arbitrary factor. Mercy, pity, sympathy, these are emotions. You promised us you would make your decision on the facts according to the law and we believed you.

*Id.* at 257, 443 S.E.2d at 62. The Court reasoned:

> Hearing the argument of the prosecution coupled with the court's instruction we do not believe a reasonable juror could understand the argument to call for the jury to disregard mitigating evidence simply because it appeals to a person's sympathies. The argument attempts to and serves to reinforce the responsibility of the jury to reach its decision based on the evidence and the law.

*Id.* at 258-59, 443 S.E.2d at 63. The same reasoning applies here. The trial court did not err by allowing this argument.

[16] Finally, defendant argues that a portion of the prosecutor's argument impermissibly urged jurors to imagine that they were potential crime victims and asked the jury to remedy larger societal problems via general deterrence. The prosecutor argued:

Ladies and gentlemen, there is no law—there is no law and order in our community unless twelve people like you are willing to do your duty. And it is a noble but weighted [sic] thing you must do. You all heard of the reference in literature to the thin blue line, referring to police officers, the thin blue line. Well, ladies and gentlemen, the thin blue line is what separates the Greg Hoffmans, that keeps them out of your home and out of your business, from you,—

[DEFENSE COUNSEL]: Object.

[PROSECUTOR]: —and your community. It's the thin—

THE COURT: Overruled.

[PROSECUTOR]: It's the thin blue line, ladies and gentlemen, that protects, serves and defends, but that line, that line, ladies and gentleman, as thin as it is, must be tied to something. It must be anchored. What is the anchor for the thin blue line? You. You are the anchor. There is no law, there is no order without you. You swore to uphold the law.

We say that if you listen to the instructions of the Court, you will answer these questions, you will respond to your oath to follow the law no matter how personally distasteful it might be, you will be the anchor for this thin blue line.

Counsel are allowed wide latitude in the argument of hotly contested cases. *State v. Alford*, 339 N.C. 562, 572, 453 S.E.2d 512, 517 (1995). We do not believe the prosecutor's argument exceeded these generous parameters. Taken in context, the prosecutor sought to illustrate the importance of the jury's role within the system of law enforcement. Having done this, the prosecutor urged the jury to "follow the law." The trial court did not err by allowing this argument.

In conclusion, all of defendant's complaints regarding the prosecutor's penalty-phase argument are without merit. This assignment of error is overruled.

Defendant next raises several issues which he concedes this Court has decided against his position, including: (1) that the trial court's refusal to grant defendant the right of allocution violated his constitutional rights, (2) that the trial court's instructions regarding the weighing of aggravating and mitigating circumstances violated his constitutional rights, (3) that the trial court's definition of "mitigating

circumstance" violated his constitutional rights, and (4) that the trial court's instructions regarding the burden of proof applicable to mitigating circumstances violated his constitutional rights. We have reviewed defendant's arguments, and we find no compelling reason to reconsider our prior holdings. These assignments of error are overruled.

Having concluded that defendant's trial and capital sentencing proceeding were free from prejudicial error, it is our duty to ascertain: (1) whether the evidence supports the aggravating circumstances found by the jury; (2) whether the sentence was entered under the influence of passion, prejudice, or any other arbitrary consideration; and (3) whether the sentence is "excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." N.C.G.S. § 15A-2000(d)(2).

[17] The jury found all three aggravating circumstances which were submitted for its consideration. First, the jury found that defendant had been previously convicted of a felony involving the use or threat of violence to the person. N.C.G.S. § 15A-2000(e)(3). Second, the jury found that defendant committed the offense for pecuniary gain. N.C.G.S. § 15A-2000(e)(6). Finally, the jury found that the murder was part of a course of conduct which included other acts of violence against other persons. N.C.G.S. § 15A-2000(e)(11). The record fully supports the jury's finding of these aggravating circumstances. Further, we find no indication that the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary consideration. We therefore turn to our final duty of proportionality review.

One purpose of proportionality review is to "eliminate the possibility that a sentence of death was imposed by the action of an aberrant jury." *State v. Lee*, 335 N.C. 244, 294, 439 S.E.2d 547, 573, *cert. denied*, 513 U.S. 891, 130 L. Ed. 2d 162 (1994). Another is to guard "against the capricious or random imposition of the death penalty." *State v. Barfield*, 298 N.C. 306, 354, 259 S.E.2d 510, 544 (1979), *cert. denied*, 448 U.S. 907, 65 L. Ed. 2d 1137 (1980). In proportionality review, it is proper to compare the present case with other cases in which this Court has concluded that the death penalty was disproportionate. *State v. McCollum*, 334 N.C. 208, 240, 433 S.E.2d 144, 162 (1993), *cert. denied*, 512 U.S. 1254, 129 L. Ed. 2d 895 (1994). We have found the death penalty disproportionate in seven cases: *State v. Benson*, 323 N.C. 318, 372 S.E.2d 517 (1988); *State v. Stokes*, 319 N.C.

1, 352 S.E.2d 653 (1987); *State v. Rogers,* 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Gaines,* 345 N.C. 647, 483 S.E.2d 396, *cert. denied,* —— U.S. ——, 139 L. Ed. 2d 177 (1997), *and by State v. Vandiver,* 321 N.C. 570, 364 S.E.2d 373 (1988); *State v. Young,* 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill,* 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant,* 309 N.C. 674, 309 S.E.2d 170 (1983); and *State v. Jackson,* 309 N.C. 26, 305 S.E.2d 703 (1983).

The instant case is distinguishable from each of these cases. In three of these cases, *Benson, Stokes,* and *Jackson,* the defendant either pled guilty or was convicted by the jury solely on the basis of the felony murder rule. Here, the defendant was convicted of first-degree murder on the basis of premeditation and deliberation and the felony murder rule. We have consistently stated that "[a] conviction based on the theory of premeditation and deliberation indicates a more calculated and cold-blooded crime." *State v. Davis,* 340 N.C. 1, 31, 455 S.E.2d 627, 643, *cert. denied,* 516 U.S. 846, 133 L. Ed. 2d 83 (1995). Further, there are four statutory aggravating circumstances which, standing alone, this Court has held sufficient to sustain a sentence of death; the (e)(3) and (e)(11) aggravating circumstances, which the jury found here, are among them. *State v. Bacon,* 337 N.C. 66, 110 n.8, 446 S.E.2d 542, 566 n.8 (1994), *cert. denied,* 513 U.S. 1159, 130 L. Ed. 2d 1083 (1995). In particular, the jury's finding of the (e)(3) aggravating circumstance, prior conviction of a violent felony, is significant because none of the cases in which this Court has held the death sentence to be disproportionate have included this aggravating circumstance. *State v. Harris,* 338 N.C. 129, 161, 449 S.E.2d 371, 387 (1994), *cert. denied,* 514 U.S. 1100, 131 L. Ed. 2d 752 (1995).

To determine whether the sentence of death is disproportionate, we also compare the instant case to cases that "are roughly similar with regard to the crime and the defendant." *State v. Lawson,* 310 N.C. 632, 648, 314 S.E.2d 493, 503 (1984), *cert. denied,* 471 U.S. 1120, 86 L. Ed. 2d 267 (1985). The present case is roughly similar to *State v. Cummings,* 346 N.C. 291, 488 S.E.2d 550. In *Cummings* the defendant robbed the victim's store. During the course of the robbery, the defendant killed the victim by shooting him in the head and then fired at the victim's wife when she came to investigate the gunfire. *Id.* at 300-03, 488 S.E.2d at 555-57. The jury convicted the defendant of first-degree murder based on premeditation and deliberation and the felony murder rule, robbery with a dangerous weapon, and assault with a deadly weapon with intent to kill. *Id.* at 300, 488 S.E.2d

at 555. At defendant's capital sentencing hearing, the jury found as aggravating circumstances that the murder was committed for pecuniary gain, N.C.G.S. § 15A-2000(e)(6), and that the murder was part of a course of conduct including other violent crimes, N.C.G.S. § 15A-2000(e)(11). *Cummings*, 346 N.C. at 333, 488 S.E.2d at 575. Further, the jury found twenty-eight of the thirty-two mitigating circumstances submitted. *Id.* at 334, 488 S.E.2d at 576. The jury recommended the death sentence, and this Court upheld that sentence as proportionate. *Id.* at 335, 488 S.E.2d at 576.

The instant case also involved a robbery during which defendant shot and killed the victim. Defendant was convicted of robbery with a firearm and first-degree murder on the basis of premeditation and deliberation and the felony murder rule. During the capital sentencing phase, the jury found three statutory aggravating circumstances: that defendant was previously convicted of a violent felony, N.C.G.S. § 15A-2000(e)(3); that the crime was committed for pecuniary gain, N.C.G.S. § 15A-2000(e)(6); and that the crime was part of a course of conduct including other violent crimes, N.C.G.S. § 15A-2000(e)(11). The jury found no mitigating circumstances.

In summary, defendant here and the defendant in *Cummings* committed similar crimes, and the juries in both cases found the (e)(6) and (e)(11) aggravating circumstances. The jury here further found the (e)(3) circumstance. In addition, the jury in *Cummings* found twenty-eight mitigating circumstances, while the jury here found none. We held the sentence of death to be proportionate in *Cummings*. The sentence of death in this case is likewise proportionate.

Defendant received a fair trial and capital sentencing proceeding, free from prejudicial error.

NO ERROR.

Justice WYNN did not participate in the consideration or decision of this case.